Mark J. Dillon (State Bar No. 108329)
mdillon@gdandb.com
Lori D. Ballance (State Bar No. 133469)
lballance@gdandb.com
Yana L. Ridge (State Bar No. 306532)
yridge@gdandb.com
Gatzke Dillon & Ballance LLP
2762 Gateway Road
Carlsbad, California 92009
Telephone: (760) 431-9501
Facsimile:  (760) 431-9512

Attorneys for Defendant/Respondent,
City of Torrance

**[See Next Page for Additional Counsel]**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZAMPERINI AIRFIELD PRESERVATION SOCIETY, a California unincorporated association,<br><br>Plaintiff/Petitioner,<br><br>v.<br><br>CITY OF TORRANCE, a California municipal corporation and ROES 1 through 100,<br><br>Defendants/Respondents. | Case No.<br><br>**NOTICE OF REMOVAL OF CASE TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1331, 1441, AND 1446**<br><br>Petition Filed:  April 22, 2024 |

Patrick Q. Sullivan (State Bar No. 179922)
psullivan@torranceca.gov
Tatia Y. Strader (State Bar No. 198735)
tstrader@torranceca.gov
Office of the City Attorney
3031 Torrance Blvd.
Torrance, California 90503
Telephone: (310) 618-5810
Facsimile:  (310) 618-5813

Attorneys for Defendant/Respondent,
City of Torrance

**TO THE COURT, COUNSEL, AND ALL PARTIES:**

   **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendant and Respondent City of Torrance (City) hereby removes this state court action from the Los Angeles County Superior Court of the State of California (Case No. 24STCP01278) to the United States District Court, Central District of California, on the grounds that the action asserts the City's adoption of a touch and go ordinance (Ordinance No. 3930) and implementing Torrance Municipal Code provisions are preempted by federal law, including the Federal Aviation Act, 49 U.S.C. § 40103(a)(1) and the Airport Noise and Capacity Act of 1990 (49 U.S.C. § 47521 *et seq*.) (ANCA), giving rise to this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331, as described below.

## I.    Background

   On April 22, 2024, Plaintiff/Petitioner Zamperini Airfield Preservation Society (Plaintiff) filed a verified petition for writs of administrative mandamus, traditional mandate, and other extraordinary relief (Complaint), challenging the validity of the City's Ordinance No. 3930, a touch and go ordinance adopted by its City Council amending the Torrance Municipal Code to regulate touch (and stop) and go and full stop-taxi back and low approaches at Torrance Municipal Airport, Zamperini Field (Airport). The City is the owner and operator of the Airport. Attached hereto and incorporated by reference as **Exhibit "A"** is a true and correct copy of Plaintiff's Summons, Complaint, and all other documents, which were served on the City.

   The City was served with the Summons and Complaint on May 7, 2024. The Complaint asserts two purported claims or causes of action: (1) writ of administrative mandamus; and (2) writ of traditional mandate. Each claim realleges and incorporates by reference all prior factual allegations, including Plaintiff's claim that the City's adopted touch and go ordinance "is preempted by federal law," including the Federal Aviation Act, 49 U.S.C. § 40103(a)(1) and ANCA (49 U.S.C. § 47521 *et seq*.). Complaint, ¶¶ 29-45.

Specifically, the Complaint alleges that the "regulation of aircraft flight rests solely with the Federal Aviation Administration" (FAA) and that pursuant to 49 U.S.C. § 40103(a)(1) "any attempt by City to regulate the airspace above Torrance or the Airport has been preempted," including the "regulation of flights." *Id*. at 11, ¶ 29. Plaintiff further alleges that "Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7 were adopted for the improper purpose of limit or preventing aircraft using the Airport from flying over nearby neighborhoods." *Id*. at 11-12, ¶ 33. The Complaint alleges that "[r]egulating flying aircraft is clearly preempted by federal law," and that Ordinance No. 3930 has "the effect of regulating aviation safety by uniformly banning low approaches and go arounds, which are typically used to ameliorate an inflight emergency." *Id*. at 12, ¶¶ 33, 35. Additionally, the Complaint alleges that the "Federal Aviation Act (49 U.S.C. § 40101 *et seq*.) … [has] preeempted the entire field of aviation safety, which nullifies the conflicting Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7." *Id*. at 12, ¶ 36. Further, the Complaint alleges:

> "Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7 impermissibly *legislate in a field that is preempted* by Federal law, including the Federal Aviation Act and regulations (*see* 49 U.S.C. § 106) promulgated thereunder." *Id*. at 12, ¶ 37.

> "Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7 *are preempted because it conflicts* with Federal law, including the Federal Aviation Act and the regulations promulgated thereunder." *Id*. at 12, ¶ 38.

> "Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7 *are expressly and impliedly preempted* by the Airport Noise and Capacity Act of 1990 (49 U.S.C. § 4752 *et seq*.) ("ANCA") for covered jet and turbo prop aircraft and helicopters." *Id*. at 12-13, ¶ 39.

> "ANCA *prohibits airports from adopting* direct or indirect restrictions on operations by aircraft that have a stage 2, 3, or higher stage rating (*i.e*., a measurement of its noise emissions), absent compliance with 14 C.F.R. Part 161, which requires FAA review — and in most cases,

affirmative FAA approval — of those restrictions," citing 49 U.S.C. § 47524. *Id*. at 13, ¶ 40.

(Emphasis added.)

After alleging that implementation of an access restriction impacts aircraft within the scope of ANCA, the Complaint further alleges that the City was required to address six conditions arising under "Title 14 C.F.R. section 161.305" and that the City "has not made any effort to obtain, and has not obtained, FAA's review or approval of Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7, as required by ANCA for covered stage-rated aircraft." *Id*. at 13 ¶ 41. Based on the above allegations, the Complaint alleges that "Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7 are non-compliant and directly conflict with ANCA." *Id*. at 13, ¶ 42.

Plaintiff's federal preemption claims are also incorporated by reference into Plaintiff's two state law mandamus claims. *See Clark v. Yosemite Cmty. Coll. Dist*., 785 F.2d 781, 787 n.5 (9th Cir. 1986) (Federal constitutional rights claims may be joined to a California mandamus action).

Among other relief requested, Plaintiff seeks an order vacating and repealing Ordinance No. 3930. *Id*. at 16, Prayer for Relief.

## II.    Venue

Plaintiff filed its Complaint in the Los Angeles County Superior Court. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1441(a) because it encompasses the county in which the state court action is pending.

## III.    This Court Has Subject Matter Jurisdiction Over This Action

Under 28 U.S.C. § 1331, United States District Courts have original jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States." This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the grounds on which Plaintiff challenges the invalidity of Ordinance No. 3930 and the implementing Municipal Code provisions are federal

3

preemption claims arising under the Supremacy Clause of the U.S. Constitution. U.S. Const. art. VI, cl. 2 and other federal statutes (Federal Aviation Act of 1958, as amended, and ANCA). Specifically, in its Complaint, Plaintiff alleges that Ordinance No. 3930 is preempted by federal law, asserting, among other allegations, that under 49 U.S.C. section 40103(a)(1), the U.S. government, through the Federal Aviation Administration (FAA), has exclusive sovereignty over the airspace of the United States.

Moreover, removal of this action is proper because, under the removal test, federal jurisdiction extends over those cases in which a well-pleaded complaint establishes "that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, thereby conferring jurisdiction to the court under § 1331." *T&E Pastorino Nursery v. Duke Energy Trading & Marketing*, 268 F.Supp.2d 1240, 1245 (S.D. Cal. 2003) (citing *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 808 (1988)). Additionally, the Complaint's alleged federal preemption claims, though not labeled a "cause of action," are expressly incorporated by reference into the state law mandamus claims, thereby constituting a claim "arising under" federal law pursuant to 28 U.S.C. § 1331. *Clark*, 785 F.2d at 787 n.5.

Further, even if a federal question did not appear on the face of the Complaint (and it does), this Court would have federal subject matter jurisdiction over the case under the "artful pleading" doctrine because Plaintiff has alleged inherently federal claims (federal preemption) in state-law mandamus terms. *See T&E Pastorino Nursery*, 268 F.Supp.2d at 1247 (citing *Brennan v. Southwest Airlines, Co.*, 134 F.3d 1405, 1409 (9th Cir. 1998)). The Court may exercise removal jurisdiction under the "artful pleading" doctrine where the right to relief depends on the resolution of a substantial, disputed federal question, which is the case here. *Id.* "A claim raises a substantial question of federal law when its resolution requires reference or interpretation of federal law." *Id.* Plaintiff's allegations of federal preemption are

essential to the establishment of the state law claims, and these state law claims require the court's resolution of the federal preemption dispute (as alleged in the Complaint), thereby raising a substantial question of federal law that allows for removal under the "artful pleading" doctrine.

## IV.    Removal is Timely

This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b)(1) because it is being filed within 30 days of May 7, 2024, the date on which the City was served with the Summons and Complaint.

## V.    Notice to Plaintiff

Concurrently with the filing of this Notice of Removal in this Court, the City will serve written notice of removal on Plaintiff's counsel and file a copy of this Notice with the Clerk of the Los Angeles County Superior Court, as required by 28 U.S.C. § 1446(d). By this Notice of Removal, the City does not waive any objections it may have as to service, jurisdiction, or venue; or any other defenses or objections it may have to this state court action. By this Notice, the City makes no admission of fact, law, or liability, and expressly reserves all challenges, defenses, motions, and/or pleas.

WHEREFORE, the City removes the above-captioned action to this Court.

May 31, 2024                    GATZKE DILLON & BALLANCE LLP

                               By:  /s/ *Mark J. Dillon*
                                    Mark J. Dillon
                                    Attorneys for City of Torrance

May 31, 2024                    OFFICE OF CITY ATTORNEY

                               By:  /s/ *Patrick Q. Sullivan*
                                    Patrick Q. Sullivan
                                    Attorney for City of Torrance

**PROOF OF SERVICE**

I declare that I am employed with the law firm of Gatzke Dillon &Ballance LLP, whose address is 2762 Gateway Road, Carlsbad, California 92009. I am not a party to the within cause, and I am over the age of eighteen years.

I hereby certify that on May 31, 2024, I served by mail the foregoing NOTICE OF REMOVAL, including exhibits, on the following persons at the following addresses in accordance with L.R. 5-3-.2 and F.R.Civ.P. 5.

Stan M. Barankiewicz II, Esq.
Orbach Huff and Henderson LLP
1901 Avenue of the Stars, Suite 575
Los Angeles, California 90067

*Attorneys for Petitioner, Zamperini Airfield Preservation Society*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Carlsbad, California on May 31, 2024.

_____
Sue Toms

# EXHIBIT A

DATE DUE TO CITY CLERK _____ **Not Applicable** _____

# CITY OF TORRANCE
# LEGAL SERVICE ROUTING FORM

☒ **SUMMONS**  ☐ SUBPOENA  ☐ Med Records - Case Number: __24STCPO12798__

**Service by** ☒ **Attorney**  ☐ Copy Service  ☐ Other: _____

Stan M. Barankiewicz II, Esquire
Orbach Huff & Henderson LLP  (310) 788-9200        Work Order:_____

**Plaintiff/Petitioner**: __Zamperini Airfield Preservation Society, an unincorporated association__

**Defendant/Respondent**: __City of Torrance, a California municipal corporation__

**Check Amount**: $ __Not Applicable__        **Clerk Control #** **S2024-79**

SENT TO:

| | |
|---|---|
| ☐ **Community Development** | ☐ **Fire (Fire Prevention)** |
|    ☐ Building and Safety |    ☐ Admin |
|    ☐ Environmental | |
|    ☐ Engineering Permits | ☐ **General Services** |
| ☐ Planning | |
|    ☐ Housing | ☐ **Community Services** |
| ☒ **City Attorney** |    ☐ Library |
|    ☐ Prosecutor |    ☐ Cultural Arts |
| |    ☐ Park Services |
| ☐ **City Manager** | |
|    ☐ Cable TV | ☐ **Police** |
|    ☐ **Human Resources** | |
|    ☐ Civil Service | ☐ **Public Works** |
| |    ☐ **Water** |
| ☐ **Finance** | |
|    ☐ Business License | ☐ **Transit Department** |
|    ☐ Payroll | ☐ **City Treasurer** |
|    ☐ Purchasing | ☐ **Comm. & Info. Technology** |
|    ☐ Risk Management | ☐ **Other**_____ |
|    ☐ Worker's Comp. | ☐ If checked, provide two (2) sets of documents (one for Outside Counsel) |

**NOTE**: Per **Torrance Charter Section 621e**, the City Clerk is the agent for service of legal process on the City of Torrance.
**Return requested records to CITY CLERK'S OFFICE for City Attorney's review and Custodian of Records Cover Letter (declaration).**
**Care should be taken to provide material in a timely manner.**

**Questions, please call X2870 or query CityClerk@TorranceCA.gov .**

- **Large subpoenas demanding additional attention will automatically be coordinated with City Attorney. If department discusses with City Attorney advise City Clerk of City Attorney Work Order # ASAP.**
- **Charges for time to compile large requests must accompany documents to allow for invoicing of requestor.**

Revised 1/04/2013

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO RESPONDENTS:**
*(AVISO AL DEMANDADO):*
CITY OF TORRANCE, a California municipal corporation and ROES 1 through 100,

**YOU ARE BEING SUED BY PETITIONER:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ZAMPERINI AIRFIELD PRESERVATION SOCIETY, a California unincorporated association,

Electronically FILED by
Superior Court of California,
County of Los Angeles
4/22/2024 3:10 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Ruiz, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Los Angeles County Superior Court
Central District - Stanley Mosk Courthouse
111 N. Hill Street
Los Angeles, CA 90067

CASE NUMBER:
*(Número del Caso):*
24STCP01278

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Stan M. Barankiewicz II, Esq.,
ORBACH HUFF & HENDERSON LLP,
1901 Avenue of the Stars, Suite 575, Los Angeles, CA 90067 (310) 788-9200

David W. Slayton, Executive Officer/Clerk of Court

DATE: 04/22/2024
*(Fecha)*

Clerk, by _____ S. Ruiz _____, Deputy
*(Secretario)*                            *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* CITY OF TORRANCE, a California municipal corporation

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)
☒ other *(specify):* CCP416.50 Public Entity

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Electronically FILED by
Superior Court of California,
County of Los Angeles
4/22/2024 3:10 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Ruiz, Deputy Clerk

1   **Stan M. Barankiewicz II, Esq. (State Bar No. 204513)**
2   **ORBACH HUFF & HENDERSON LLP**
    **1901 Avenue of the Stars, Suite 575**
3   **Los Angeles, California 90067-6007**
    **Telephone:  (310) 788-9200**
4   **Facsimile:   (310) 788-9210**
    **sbarankiewicz@ohhlegal.com**

5   Attorneys for Petitioner
    ZAMPERINI AIRFIELD PRESERVATION SOCIETY

6

7                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                        **FOR THE COUNTY OF LOS ANGELES**

9

10  ZAMPERINI AIRFIELD PRESERVATION          CASE NO.:  24STCP01278
    SOCIETY, a California unincorporated
11  association,                             UNLIMITED JURISDICTION

12              Petitioner,                  **VERIFIED PETITION FOR WRITS OF:**

13  v.                                       **(1) ADMINISTRATIVE MANDAMUS**
                                             **(CCP § 1094.5)**
14  CITY OF TORRANCE, a California municipal  **(2) TRADITIONAL MANDATE (CCP**
    corporation and ROES 1 through 100,      **§ 1085), OR**
15                                           **(3) OTHER EXTRAORDINARY**
                Respondents.                 **RELIEF**
16
                                             [Petitioner's Request to Prepare the Administrative
17                                           Record filed concurrently herewith.]

18

19

20          Petitioner ZAMPERINI AIRFIELD PRESERVATION SOCIETY ("ZAPS" or "Petitioner")

21  hereby brings the following Verified Petition for Writs of Administrative Mandamus and Traditional

22  Mandate ("Petition") against Respondent CITY OF TORRANCE ("City" or "Respondent"), and

23  ROES 1 through 100, and allege as follows:

24                                      **PARTIES**

25          1.      Petitioner ZAPS is a California unincorporated association whose members include

26  individuals residing in the City of Torrance who fly airplanes, helicopters, and/or jets from and to

27  Torrance Municipal Airport.  ZAPS brings this action on its own behalf and on behalf of the public

28  utilizing the Torrance Municipal Airport.  Members of ZAPS have a beneficial interest in this action

ORBACH HUFF & HENDERSON LLP

COT - CITY CLERK
'24 MAY 7 PM 2:40

1

1    because the City's ban of touch and goes, stop and go, taxi-backs, and low approaches affect the

2    members directly as being subject to these bans under Ordinance No. 3930 and its implementing of

3    Torrance Municipal Code sections 51.5.1 through 51.5.7.

4        2.    Respondent City is now, and at all relevant times mentioned herein, a California

5    municipal corporation, a charter city, located in the County Los Angeles and the owner of Torrance

6    Municipal Airport.

7        3.    Respondents 1 through 100 inclusive, whether individual, corporate, associate, or

8    otherwise, are fictitious names of Respondents whose true names and capacities are, at this time,

9    unknown to Petitioner. Petitioner alleges that at all times herein mentioned, each of the Respondents

10   sued herein as ROE was acting for himself/herself, or itself as an agent, servant, and employee of

11   his/her or its co-respondents, and in doing the things hereinafter alleged, was acting within the scope

12   of authority as that agent, servant and employee and with the knowledge, permission and/or consent

13   of his/her or its co-respondents, and each of those factiously named respondents, whether acting for

14   himself/herself or itself or as an agent, corporation, association, or otherwise, is in some way liable or

15   responsible to Petitioner. At the time as Respondents' true names become known to them, Petitioner

16   will seek leave to amend its Petition to insert those Respondents' true names. Reference herein to

17   Respondents, without any other limitation, shall include both the specifically named and fictitiously

18   named Respondents.

19   **VENUE AND JURISDICTION**

20       4.    Venue is proper in this Court per Code of Civil Procedure section 395(a) as the acts

21   and omissions complained of herein occurred, and the property affected by those acts is located in Los

22   Angeles County.

23       5.    This Court has subject matter jurisdiction over this matter, pursuant to Code of Civil

24   Procedure sections 1085 and 1094.5. ZAPS is an aggrieved person, as a person who itself or through

25   a representative, appeared at the public hearings of the City Council and objected to the City's adoption

26   and passage of Ordinance No. 3930 ("Touch & Go Ordinance") and promulgation of its implementing

27   Torrance Municipal Code sections 51.5.1 through 51.5.7.

28       6.    This Court has personal jurisdiction over each party in this action because each of them

ORBACH HUFF & HENDERSON LLP

1   is either organized under the laws of the State of California, incorporated in, and/or qualified to

2   conduct business, or conducting business, in the State of California and the County of Los Angeles.

3       7.    The real property which is the subject of this Petition is located at and commonly

4   known as Zamperini Field or Torrance Municipal Airport with the International Civil Aviation

5   Organization ("ICAO") identifier of KTOA.

6       8.    This action is commenced within the time limits imposed for this action under Code of

7   Civil Procedure sections 1085 and 1094.5. Further, ZAPS exhausted all available legal remedies prior

8   to filing this Petition.

9       9.    An ordinance is a legislative act that is reviewable by writ of mandate. (*Yes in My Back*

10  *Yard. v. City of Culver City* (2023) 96 Cal.App.5th 1103, 1112-13.)

11      10.    In accordance with Code of Civil Procedure section 1094.6(c), ZAPS has concurrently

12  filed a request for City to prepare the administrative record.

### TORRANCE MUNICIPAL AIRPORT

14      11.    On March 5, 1948, the United States executed a Quitclaim Deed to City for a portion

15  of the Torrance Municipal Airport, which was commonly referred to as the Lomita Flight Strip

16  ("Airport"). As part of this Quitclaim Deed, City was required to not "limit its usefulness as an

17  airport."

18      12.    ZAPS is informed and believes, based on its review of publicly recorded documents

19  and publicly available correspondence obtained via the Freedom of Information Act, that on March

20  22, 1956, the United States and the City entered into a deed conveying the "lands or interests in lands"

21  upon which the Airport sits to the City, on the condition that the City "will maintain the project

22  constructed thereon," i.e., as the Federal Aviation Administration has interpreted (in, e.g. an April 7,

23  2004 letter from Mark McClardy, Manager, Airports Division, FAA, "coordinated with the Airports

24  Division and the Office of the Regional counsel at the FAA Western-Pacific Region, and the Office

25  of Airports and the Office of the Chief Counsel at Headquarters"), that the City maintain the Airport

26  as an airport. This deed was accepted by a resolution approved by the then Mayor of the City on May

27  1, 1956.

28  ///

*ORBACH HUFF & HENDERSON LLP*

VERIFIED PETITION FOR WRITS OF ADMINISTRATIVE MANDAMUS & TRADITIONAL MANDATE

ORBACH HUFF & HENDERSON LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ZAPS'S OPERATIONS AT THE AIRPORT

13.    ZAPS has many Airport user members, many of whom have aircraft that are subject to the Touch & Go Ordinance and Torrance Municipal Code sections 51.5.1 through 51.5.7.

## CITY'S MULTIPRONG ATTACK ON FLYING AIRCRAFT

14.    The City has unleashed a multiprong attack on flying aircraft by imposing a 6-flight school limitation, instituting landings fees, and banning touch and goes, stop and goes, taxi backs, and low approaches.  On October 25, 1977, under Subject 10, Airport Noise Ordinance, City Council separately created, approved, and adopted Resolution No. 77-215, a Resolution of the City Council of the City of Torrance Reaffirming a Previously Adopted Policy to Institute a Program of Aircraft Noise Abatement and Directing the City Manager and Other City Officials to Take Certain Steps to Implement Such Program.  In the fifth Whereas clause of Resolution No. 77-215, it states, "[T]he volume of flights emanating from Torrance Municipal Airport will be controlled at a level compatible with community tranquility…."  Section 1 of Resolution No. 77-215 states, "That it hereby reaffirms the noise abatement policies for the Torrance Municipal Airport which it has previously adopted (supplementary to those polices which are the subject of the noise abatement ordinance), to wit:"  Section 1, Item 16 of Resolution No. 77-215 states, "That the number of flight schools on the Airport be limited to six (the number of schools now operating)." ("6-Flight School Limitation".)  Section 1, Item 21 of Resolution No. 77-215 states, "That the City Manager seek alternative training fields for training flights, particularly touch and go and stop and go operations."

15.    In November 1981, City published the Torrance Municipal Airport Aircraft Noise Control and Land Use Compatibility Study ("ANCLUC Report").  On page 1-1 of the ANCLUC Report, it states, "The long history of over 1000 flight operations per day at Torrance Municipal Airport (TOA) has produced conflicts with surrounding residential land uses that were sufficient to cause the City to initiate a comprehensive aircraft noise abatement program."

16.    On December 14, 2021, City Council considered Agenda Item 9H, Community Development – Award Consulting Services Agreement for Airport Noise Monitoring System and Authorize an Additional Environmental Quality Officer. Expenditure: $627,078 (Non-General Fund). Numerous comments were made complaining about flying aircraft from flight schools.

4

17.     On March 29, 2022, City Council considered Agenda Item 9B, Community Development – Accept and File Torrance Municipal Airport (Zamperini Field) Noise Abatement Update. Expenditure: None. During consideration of this Agenda Item, City Council listened to discussions on the Torrance Municipal Code Section 51.2.3(e)'s prohibition on early left turns and the number of flights due to the flight schools at Torrance Municipal Airport. Numerous comments were made complaining about aircraft flying over homes and that something has to be done.

18.     On November 8, 2022, City Council considered Agenda Item 9I, City Attorney, Community Development, and General Services – Accept and File Torrance Municipal Airport (Zamperini Field) Noise Abatement and Airport Operations Update and Review and Provide Direction on Implementation of Landing Fees. Expenditure: None. During consideration of Item 9I, numerous comments were made complaining about flying aircraft. One commenter said, "The Walteria neighborhood has been bombarded by south training pattern flights from flight schools…." "Torrance should not allow any private flight school to use a public resource for its own benefit while disrespecting the residents who live near that resource and help pay for it through their taxes. The city should either permanently reduce the number of flight schools that can operate out of Torrance Airport…" Another commentor said, "The city should address this issue by incorporating the following enforcement strategies: [¶]…[¶] Restrict the number of training flights, ensuring that they turn at the ocean when making their loops. Currently there are 7 flight training schools at Torrance Airport, which is too many for a municipal airport surrounded by so many residential tracts. There are only two flight training schools each at the Hawthorne and Santa Monica Airports." Further, Ms. Ramirez gave a staff presentation on Item 9I, in which she said the number of repetitive flights over surrounding neighborhoods has increased, commenting: "An additional tool to curb the number of repetitive flights would be the implementation of landing fees." Ms. Ramirez also stated, "This is such an increase of touch-and-go landings and pattern work that has increased not only the amount of operations but repetitive flights over surrounding neighborhoods which can be a nuisance to the residents. Council member Lewis stated: "So I am in 110 percent in support of trying to figure out a viable solution if that is landing fees or…." Council member Griffiths agreed: "Again, there are fee for landing fees that should be a no-brainer." An unidentified speaker stated, "I live north of the airport

ORBACH HUFF & HENDERSON LLP

and like many others, I work fully from home and the low flying planes are loud, nonstop from morning to evening. The touch-and-go flying above makes it near impossible to enjoy my home."

19.     Now driven by the residents' complaints and City Council's hostility to flying aircraft, City Council embarked on a campaign to severely limit aircraft flying overhead.  This hostility has come to a feverous pitch when City Council decided to take a number of actions to curb flying aircraft under City Council Agenda Item 9A, Transportation Committee - Accept and File April 12, 2023 Meeting Minutes and Provide Direction Regarding Airport Landing Fees, Air Noise Mitigation Efforts, and Phase Out of Leaded Gas.  Expenditure: None on July 25, 2023.  The Staff Report for Item 9A stated, "The two general issues with noise impacts on the communities surrounding Torrance Airport are the high frequency of flights generated by flight schools, and the low flight altitude of aircraft turning to the southwest over noise-sensitive neighborhoods immediately after takeoff." Paul and Mary Livio emailed, "We have lived in Torrance over 40 years and have noticed a marked increase in airplane and helicopter noise over our area hear near Hickory Elementary."  Monique Tippie emailed, "Friday still non stop not that the school is flying over Lomita residents the schools is doing their touch and go till 9:30 pm[.]"  During the course of considering Agenda Item 9A, numerous comments were made about noise from flying aircraft.  "It is not uncommon to receive complaints of low-flying noisy aircraft west of Anza Avenue and Pacific Coast Highway."  "You know less people are going to want to fly and quite honestly I think that's really the end goal is to reduce the amount of traffic over our skies."  "A lot of the email complaints that we get is are people that are doing those constant circles over people's houses."  "The loud noise and frequency of planes is intolerable, I can no longer enjoy my home or yard without constant revving of engines flying low overhead at time them plane going over every minute."  "It would eliminate a ton of noise over all of our HOA area when the pilots miss that they kind of cut right over our neighborhood and that's what we're getting this really low you know flying noise."  "Nonstop fly [ing] needs to stop."  "Hopefully, we will be able to hear a little bit without a whole of airplane noise flying overhead."  The reason for the landing fees and the action being considered was to regulate and limit flying aircraft. "The Transportation Committee (Committee) met on December 14, 2022 and April 12, 2023 to receive input and provide direction regarding concerns about the Torrance Municipal Airport - Zamperini Field (Airport). Items

discussed were options for reduction of aircraft operations and noise[.]" And, "Discussion from both Torrance residents and the aviation community was heard, each with proposals and feedback as ***how to best mitigate the*** noise and ***frequency of flights in the areas surrounding the Airport***." (Emph. added.)  During public comment on Item 9A, Jim Gates, an officer and member of Torrance Airport Association, Christy Haworth, Michael Calabrese, Lee Unger, Anne Minder, Marilyn McPoland, Richard Smith, Richard Shaw, Marianne Wightman, Eric Hansen, Ronald K. Williams, Oded Yossifor, Lon Sobel, Linda Abrams, Walter Tondu, Venessa Gibson, Emilio H. Morales, Gorge Cohen, Scott Osborn, Betty Taylor, Brandon Mercade, Stephen D. Nordel, Eric Roth, and others objected that landing fees are the answer to reducing flying aircraft.

20.    Also, during City Council's consideration of Agenda Item 9A on July 25, 2023, Council member Mattucci stated, "On December 14, 2022, and April 12, 2023, the Transportation Committee met to receive input and provide direction regarding concerns about the Torrance Municipal Airport - Zamperini Field.  Items to discuss were operation for reduction of aircraft operations and noise, including the limitation and revision of runways, enforcement of early left turn violations, and the commissioning of a noise study to potentially expand the existing noise monitoring system.  Additional topics include the implementation of landing fees and the development of a voluntary letter of agreement between the Torrance based six fixed-wing flight operations and the City of Torrance.  Discussion from both Torrance residents and the aviation community was heard, each with proposals and feedback as to how best mitigate the noise and frequency of flights in the area surrounding the airport."  Council member Mattucci also stated, "But banning touch and goes might be a way to at least alleviate some of that traffic over peoples' house…."  Council member Sheikh stated, "So even with the landing fee, I mean, that's a deterrent, but there is no promise that it would reduce the noise level."  Council member Sheikh also asked a commenter whether landing fees would reduce noise pollution, to which the commenter replied, "Yes, sir."  Council member Mattucci further stated, "So on Item 209 A [sic], approve implementation of landing fees.  I'm a big supporter of landing fees."  He went on to say, "And quite honestly, I think that's the end goal, to reduce the amount of traffic over our skies."  Mr. Lacaria stated, "There are numerous planes that are constantly flying low over homes, circling.  We can't converse in our homes, and it's really an intolerable situation.

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

There's a lot of solutions. I support COTAR's recommendation of eliminating touch and go landings." (Transcript, pp. 83:22 - 84:1.) An unidentified speaker said, "I live north of the airport and those under the north path are still suffering from oversaturation due to constant touch and goes." (*Id.* p. 86:7-10.)

21.    On July 25, 2023, also during the proceedings on City Council Agenda Item 9A, a motion was made and carried to modify the hours and days for allowed touch and goes.

22.    On September 12, 2023, City Council considered Agenda Item 9F, City Manager and City Attorney – Reconsideration of a Council Action Not to Ban Touch and Goes at Torrance Municipal Airport – Zamperini Field. Expenditure: None.  Numerous written comments were made complaining about flying aircraft. Sara Hwang Slim emailed, "I have been noticing an increase in the number of aircraft flying over our community, and the noise is getting really frustrating. [] I've attached a snapshot of 1 aircraft-...performed multiple rounds of touch-and-goes until 6:30pm and 2 rounds where the pilot flew about 855 feet above my neighborhood on Tuesday, 9/5." Dave Roelen emailed, "We Torrance residents live here and are constantly and negatively impacted by low repetitious noisy flights.... Bring the Touch-and-Go issue back before the City Council and permanently solve this worsening problem." COTAR wrote, "The Coalition for Torrance Airport Reform (COTAR) commends the Council for the actions at its July 25 meeting to protect residents from the impact of excessive flight training operations...." Paula Johnson emailed, "I am a homeowner on Paseo de las Tortugas and the noise of the touch and goes and flights coming over my property continues to be out of control. [] I cannot use by backyard most days." The Aircraft Owners and Pilots Association wrote, "[P]rohibiting touch-and-goes cannot be done to control noise from aircraft in flight." Cindy Ramage emailed, "I live right over 'their' path and they aren't using Lomita Blvd.  They come right over me and I live right behind south high." Duncan Gambe emailed, "Interesting to note that if you ask any person from any of the affected areas about the big increase in repetitive, low flying planes and they will all ask: How was this allowed to happen?"

23.    On October 17, 2023, City Council considered Agenda Item 9G, City Manager and City Attorney – City Council Consideration of a Ban on Touch and Goes at Torrance Municipal Airport – Zamperini Field. Expenditure: None.  The staff report contained the staff report for Item 9A from the City Council's July 25, 2023 meeting, as Attachment B, which reads, "The two general issues

VERIFIED PETITION FOR WRITS OF ADMINISTRATIVE MANDAMUS & TRADITIONAL MANDATE

ORBACH HUFF & HENDERSON LLP

1    with noise impacts on the communities surrounding Torrance Airport are the high frequency of flights

2    generated by flight schools, and the low flight altitude of aircraft turning to the southwest over noise-

3    sensitive neighborhoods immediately after takeoff." On October 9, 2023, Paul and Mary Livio

4    emailed, "We have lived in Torrance over 40 years and have noticed a marked increase in airplane

5    and helicopter noise over our area hear near Hickory Elementary." On September 29, 2023, Monique

6    Tippie emailed, "Friday still non stop not that the school is flying over Lomita residents the schools is

7    doing their touch and go till 9:30 pm[.]" Charmaine Uemura emailed, "At this point, I feel selfish to

8    say that we should no longer allow touchdowns at all. There are days I have a plane circling my home

9    every 2-4 minutes and it is extremely loud." Stuart Ross emailed, "I live on [redacted] St and Madison,

10   The touch and goes are constantly using this intersection as a turning point and climbing point. ... My

11   neighbors and I have to pause our conversation while these planes fly overhead and it destroys the

12   value of the neighborhood. This is not an acceptable solution. There needs to be very limited touch

13   and goes or no touch and goes. Vote Yes on Banning Touch and Goes." Dave Roelen emailed, "Today

14   was another dangerous day of low and noisy student pilot practice flights over Torrance homes, over

15   and over and over! [¶] You must help Torrance citizens and permanently stop all touch-and-go

16   practice flights at Torrance Airport." Jim Montgomery emailed, "As a side note, as I type this, a noisy

17   aircraft is flying overhead. [¶] ... [¶] ps. And yet another one. In the time it took to type this request,

18   three aircraft noisily flying by our house. Please vote to ban touch and gos." Monique Tippie emailed,

19   "As a resident of Torrance over 40 years I don't remember planes flying over my house especially the

20   north take off being bombarded by low flying planes and the noise and I have written many letters to

21   invite any councils to sit with me for one day in my backyard and let the city there knows is problems

22   the in air." Ms. Spatze commented, "I would like to encourage the city council to ban all touch and

23   go exercises at the Torrance Airport. While touch and goes may be a convenient but not necessary

24   time-saving maneuver for pilots, the repetitive looping of touch and goes over surrounding residential

25   neighborhoods should not be tolerated." Ms. Brunetti stated, "The touch and go training flights mean

26   low-flying student pilots repeatedly circling over Torrance neighborhoods and schools." Numerous

27   comments were made complaining about flying aircraft.

28          24.    On November 28, 2023, City Council conducted a public hearing and the first reading

VERIFIED PETITION FOR WRITS OF ADMINISTRATIVE MANDAMUS & TRADITIONAL MANDATE

ORBACH HUFF & HENDERSON LLP

1  of the "Landing Fees Ordinance" under Agenda Item 10B and approved the Landing Fees Ordinance.

2  Sue LaVaccare emailed, "The majority of Torrance airport users are not Torrance residents, so do not

3  suffer the multiple negative consequences of the unregulated and high-volume aircraft traffic over

4  homes and schools." Monique Tippie emailed, "To all councils. Please as residents of Torrance over

5  40 years and very much affected with this touch and go and the flight schools flying lower and

6  lower...." Scott Aitchison emailed, "Please minimize noise by reducing flights over New Horizons. I

7  hear same plane go by 4-8 times 5 minutes apart. It goes in circles with others 1 minute behind. Some

8  start at 8 am. Some fly very low and loud. I'm 67 I vote every election. I'm sensitive I have Lupus.

9  Please support flight [plane emoji] reduction doing circles Thank you Scott Aitchison." Dave Roelen

10  emailed, "And aircraft noise over our residences makes no distinction of aircraft weight or aircraft

11  class ... noise is noise!" Elisabeth Kanyer emailed, "What is the plan for regulating these dangerous

12  groups flying too low disrupting our lives...." Mr. Broen commented, "There is not a person in this

13  room that believes the reason for landing fees is for money."

14      25.    On December 12, 2023, City Council conducted the second reading of the Landing

15  Fees Ordinance and adopted and passed it as Ordinance No. 3927 under Agenda Item 12B. This action

16  amended Torrance Municipal Code sections 51.2.30, "Definition of Revenue Operations" and 51.2.31,

17  "Fee for Revenue Operations," and repealed section 51.2.32, "Refusal for Clearance."

18      26.    On January 23, 2024, the Touch & Go Ordinance was introduced and approved by City

19  Council under Agenda Item 9H. Janet Katz emailed, "In Torrance, these repetitive take-offs and

20  landings are at low altitudes while taking off over two baseball fields, parks full of children, schools

21  in session, and neighborhoods of homes and apartments, as well as landing over homes and shopping

22  centers." A commenter complained about flying aircraft, "When weather allows, Sling's repetitive

23  training and touch and go training flights hover over our neighborhoods over 30, 40, 50 times an

24  hour...."

25      27.    On February 1, 2024, the Landing Fee Ordinance went into effect.

26      28.    On February 6, 2024, City Council adopted and passed the Touch & Go Ordinance,

27  also known as, Ordinance No. 3930, An Ordinance of the City Council of the City of Torrance,

28  California, Amending Article 5 "Touch (and Stop) and Go, Full Stop-Taxi Back and Low Approaches"

of Chapter 1, Division 5 of the Torrance Municipal Code under Item 12A. Thereafter, City promulgated Torrance Municipal Code sections 51.5.1 through 51.5.7 to implement Ordinance No. 3930.

### THE TOUCH & GO ORDINANCE IS PREEMPTED BY FEDERAL LAW

29.    City regulation of flying aircraft is additionally preempted by federal law. As an overarching matter, the regulation of aircraft flight rests solely with the Federal Aviation Administration ("FAA"). Per Title 49 United States Code section 40103(a)(1), "The US Government has exclusive sovereignty of airspace of the United States." This means that any attempt by City to regulate the airspace above Torrance or the Airport has been preempted. This includes the regulation of flights.

30.    Both in 2020 and 2022, the FAA repeatedly told City it cannot regulate flight; only the FAA can. In a letter dated February 18, 2020, to the Torrance Airport Association, the FAA stated, "Congress has long vested the FAA with authority to regulate the areas of airspace use, management and efficiency; air traffic control; safety; navigational facilities; and aircraft noise at its source." In response to a question about Torrance Municipal Code section 5.2.3(e), which prohibits aircraft from turning left until it has reached the ocean or attained an altitude of fifteen hundred (1,500) feet, the FAA readily struck it down explaining:

> "Because the Torrance code provision applies to aircraft in flight, it is not consistent with the Federal statutory and regulatory framework described above. Enforcement of the provision would be at odds with various court opinions. As noted, state and local governments lack the authority to regulate airspace use, management and efficiency; air traffic control; and aircraft noise at its source. Federal courts have found that a navigable airspace free from inconsistent state and local restrictions is essential to the maintenance of a safe and sound air transportation system."

31.    In response, by letter dated August 16, 2021, and then through its attorneys on September 20, 2022, City asked the FAA if the early left turn prohibition was grandfathered. The FAA said no.

32.    On April 12, 2023, the City's Transportation Committee was presented with options to provide direction on reducing allowable flights. One of those options was to impose landing fees.

33.    On information and belief, ZAPS thereon alleges that Ordinance No. 3930 and

11

VERIFIED PETITION FOR WRITS OF ADMINISTRATIVE MANDAMUS & TRADITIONAL MANDATE

ORBACH HUFF & HENDERSON LLP

Torrance Municipal Code sections 51.5.1 through 51.5.7 were adopted for the improper purpose of limit or preventing aircraft using the Airport from flying over nearby neighborhoods. Regulating flying aircraft is clearly preempted by Federal Law.

34.    On information and belief, ZAPS thereon alleges that the City's imposition of the 6-flight school limitation, imposition of landing fees, and banning of touch and goes, stop and goes, taxi backs, and low approaches directly and indirectly regulate flying aircraft in the National Air Space, modify the use of the National Air Space without the FAA's consent or approval, and create flight restrictions that can cause dangerous conditions by forcing pilots to choose between violating Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7, or engaging in dangerous actions trying to avoid violating Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7.

35.    On information and belief, ZAPS thereon alleges that Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7 have the effect of regulating aviation safety by uniformly banning low approaches and go arounds, which are typically used to ameliorate an inflight emergency.

36.    The Federal Aviation Act (49 U.S.C., § 40101 et seq.) ("Federal Aviation Act") and the regulations (*see* 49 U.S.C., § 106) promulgated thereunder have preempted the entire field of aviation safety, which nullifies the conflicting Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7.

37.    On information and belief, ZAPS thereon alleges that Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7. impermissibly legislate in a field that is preempted by Federal Law, including the Federal Aviation Act and the regulations (*see* 49 U.S.C., § 106) promulgated thereunder.

38.    On information and belief, ZAPS thereon alleges that Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7 are preempted because it conflicts with Federal Law, including the Federal Aviation Act and the regulations promulgated thereunder.

39.    On information and belief, ZAPS thereon alleges that Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7 are expressly and impliedly preempted by

ORBACH HUFF & HENDERSON LLP

the Airport Noise and Capacity Act of 1990 (49 U.S.C., § 47521 et seq.) ("ANCA") for covered jet and turboprop aircraft and helicopters.

40.    ANCA prohibits airports from adopting direct or indirect restrictions on operations by aircraft that have a stage 2, stage 3, or higher stage rating (i.e., a measurement of its noise emissions), absent compliance with 14 C.F.R. Part 161, which requires FAA review – and in most cases, affirmative FAA approval – of those restrictions.  (49 U.S.C., § 47524.)

41.    To implement an access restriction which would impact aircraft within the scope of ANCA (i.e., a prohibition on touch-and-go, low approach, and other operations which apply to the stage-rated aircraft operated by Petitioner's members), among other requirements the airport must conduct a study which addresses six conditions pursuant to Title 14, Code of Federal Regulations ("C.F.R.") section  161.305, which requires: (i) that the restriction is reasonable, nonarbitrary, and nondiscriminatory; (ii) the restriction does not create an undue burden on interstate or foreign commerce; (iii) the restriction maintains safe and efficient use of the navigable airspace; (iv) the restriction does not conflict with any existing federal statute or regulation; (v) there has been adequate opportunity for public comment on the proposed restriction; and (vi) the restriction does not create an undue burden on the national aviation system; submit the study to the FAA pursuant to  14 C.F.R. § 161.311; and obtain affirmative approval of the restriction from the FAA pursuant to 14 C.F.R. § 161.313.  On information and belief, ZAPS thereon alleges that the City has not made any effort to obtain, and has not obtained, FAA's review or approval of Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7, as required by ANCA for covered stage-rated aircraft.

42.    Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7 are noncompliant and directly conflict with ANCA.

43.    One member of Petitioner operates a Saab 340 aircraft, which has a Stage 3 rating from the FAA, and as set forth in the attached declaration, desires to perform touch-and-go operations at the airport, but is prohibited from doing so based on the restrictions at issue, despite their non-compliance with ANCA.

44.    One member of Petitioner is based at the Airport and operates a SF-50 VisionJet aircraft, which has a Stage 3 rating from the FAA and desires to perform touch-and-go operations at

ORBACH HUFF & HENDERSON LLP

the airport, but is prohibited from doing by Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7, despite its noncompliance with ANCA.

45.     As of March 8, 2024, City has imposed Ordinance No. 3930 by amending the Torrance Municipal Code with the addition of Article 5 – "Touch (Stop" and Go, Full Stop-Taxi Back and Low Approaches" of Chapter 1, Division 5 (§§ 51.5.1 through 51.5.7) and is enforcing Ordinance No. 3930 and implementing Torrance Municipal Code sections 51.5.1 through 51.5.7 against ZAPS' members, violating its provisions.

**ADOPTION OF TOUCH & GO ORDINANCE WAS ARBITRARY AND CAPRICIOUS**

**AND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

46.     Ordinance No. 3930 is in the nature of a zoning ordinance because it bans certain aircraft operations from landing on City property (i.e., the Airport), which is a restriction on the use of property.

47.     Ordinance No. 3930 was adopted and Torrance Municipal Code sections 51.5.1 through 51.5.7 were promulgated with the improper purpose to regulate flying aircraft by limiting flights over neighborhoods around the Airport.

48.     As a result, the City's adoption of Ordinance No. 3930 and promulgation Torrance Municipal Code sections 51.5.1 through 51.5.7 were, and are, arbitrary and capricious because the City cannot regulate aircraft flying over neighborhoods.

**FIRST CAUSE OF ACTION**

**(Writ of Administrative Mandamus pursuant to Code of Civil Procedure section 1094.5 to**

**Command City to Vacate Ordinance No. 3930 and Repeal of Torrance Municipal Code**

**sections 51.5.1 through 51.5.7.)**

**[As Against City and ROES 1 through 100]**

49.     ZAPS realleges and incorporates by reference each paragraph above and below, as though fully set forth herein.

50.     ZAPS has a beneficial interest in the outcome of the proceedings because its members are subject to the ban of conducting touch and goes, stop and goes, stop and taxi backs, and low approaches at the Airport as a result of Ordinance No. 3930 and Torrance Municipal Code sections

ORBACH HUFF & HENDERSON LLP

14

1   51.5.1 through 51.5.7.

2   51.    ZAPS's members, as represented by ZAPS, have a clear, present, and legal right to

3   conduct touch and goes, stop and goes, stop and taxi backs, and low approaches at the Airport.

4   52.    ZAPS has exhausted all available administrative remedies required to be pursued by it.

5   53.    ZAPS lacks any plain, speedy, and adequate legal remedy to challenge City's decision

6   to ban touch and goes, stop and goes, stop and taxi backs, and low approaches at the Airport imposed

7   by Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7 because no

8   provision of Torrance Municipal Code, statute or common law provides a legal cause of action to

9   challenge Ordinance No. 3930 or and Torrance Municipal Code sections 51.5.1 through 51.5.7.

10  54.    City's adoption of Ordinance No. 3930 and promulgation of Torrance Municipal Code

11  sections 51.5.1 through 51.5.7 were done for the improper purpose of regulating aircraft flying over

12  neighborhoods that are preempted by the FAA's jurisdiction over the national airspace.

13  55.    ZAPS seeks this Court's Judgment and issuance of a peremptory writ ordering City to

14  vacate and repeal Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through 51.5.7.

15  **SECOND CAUSE OF ACTION**

16  **(Writ of Traditional Mandate pursuant to Code of Civil Procedure section 1085 to Compel**

17  **City to Vacate Ordinance No. 3930 and Repeal of Torrance Municipal Code sections 51.5.1**

18  **through 51.5.7.)**

19  **[As Against City and ROES 1 through 100]**

20  56.    ZAPS realleges and incorporates by reference each paragraph above and below, as

21  though fully set forth herein.

22  57.    ZAPS has a beneficial interest in the outcome of the proceedings because it and its

23  members are subject to the ban of touch and goes, stop and goes, stop and taxi backs, and low

24  approaches at the Airport.

25  58.    City illegally adopted Ordinance No. 3930 and promulgated Torrance Municipal Code

26  sections 51.5.1 through 51.5.7, which are preempted by Federal Law and the FAA's jurisdiction of the

27  national airspace, and thus, Ordinance No. 3930 and Torrance Municipal Code sections 51.5.1 through

28  51.5.7 are invalid as a matter of law.

ORBACH HUFF & HENDERSON LLP

59.    ZAPS has exhausted all available administrative remedies required to be pursued by it.

60.    ZAPS lacks any plain, speedy, and adequate legal remedy to challenge City and ROES 1 through 100's adoption of Ordinance No. 3930, promulgation of Torrance Municipal Code sections 51.5.1 through 51.5.7, and their decisions to regulate flying aircraft by banning touch and goes, low approaches, stop and goes, and stop and taxi backs in order to regulate aircraft flying over neighborhoods.

61.    ZAPS seeks this Court's Judgment and issuance of a peremptory writ ordering City to vacate Ordinance No. 3930 and repeal Torrance Municipal Code sections 51.5.1 through 51.5.7.

## PRAYER FOR RELIEF

WHEREFORE, ZAPS respectfully prays for Judgment against Respondents, and each of them, as follows:

1.    For a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5 commanding City and ROES 1 through 100 to vacate Ordinance No. 3930 and repeal Torrance Municipal Code sections 51.5.1 through 51.5.7.

2.    For a writ of traditional mandate pursuant to Code of Civil Procedure section 1085 commanding City and ROES 1 through 100 to vacate Ordinance No. 3930 and repeal Torrance Municipal Code sections 51.5.1 through 51.5.7.

3.    For Petitioner's costs of suit.

4.    For attorneys' fees pursuant to Code of Civil Procedure sections 1021.5 and 1032 and/or other applicable law.

5.    For such other and future relief as the Court deems just and proper.

DATED:  April 22, 2024                 ORBACH HUFF & HENDERSON LLP


By: _____
    Stan M. Barankiewicz II, Esq.
    Attorneys for Petitioner
    ZAMPERINI AIRFIELD PRESERVATION
    SOCIETY

ORBACH HUFF & HENDERSON LLP

VERIFIED PETITION FOR WRITS OF ADMINISTRATIVE MANDAMUS & TRADITIONAL MANDATE

**VERIFICATION**

I, the undersigned, declare:

I am the Petitioner in this action. All facts alleged in the above document are true of my own personal knowledge. I have read the above Petition for Writ of Administrative Mandate and Traditional Mandate and know its contents. All facts alleged in the Petition are true of my own personal knowledge.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on <u>April 22, 2024</u> at <u>Long Beach</u>, California.

Ivan Arnold, President

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Stan M. Barankiewicz II, Esq. (SBN 204513)<br>ORBACH HUFF & HENDERSON LLP, 1901 Avenue of the Stars, Suite 575<br>Los Angeles, CA 90067<br>TELEPHONE NO.: (310) 788-9200    FAX NO.: (310) 788-9210<br>EMAIL ADDRESS: sbarankiewicz@ohhlegal.com<br>ATTORNEY FOR *(Name):* Petitioner Zamperini Airfield Preservation Society | **Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>4/22/2024 3:10 PM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By S. Ruiz, Deputy Clerk** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: STANLEY MOSK COURTHOUSE

CASE NAME: Zamperini Airfield Preservation Society v. City of Torrance, et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|---|
| ☒ **Unlimited**<br>(Amount<br>demanded<br>exceeds $35,000) | ☐ **Limited**<br>(Amount<br>demanded is<br>$35,000 or less) | ☐ Counter    ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **24STCP01278** |
| | | | JUDGE: |
| | | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☒ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☐ monetary b. ☒ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify):* Two (2)
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: April 22, 2024

Stan M. Barankiewicz II, Esq.
(TYPE OR PRINT NAME) ▶ *(signature)* (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

| SHORT TITLE | CASE NUMBER |
|---|---|
| Zamperini Airfield Preservation Society v. City of Torrance, et al. | 24STCP01278 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

| This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court |
|---|

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1.  Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7.  Location where petitioner resides. |
| 2.  Permissive filing in Central District. | 8.  Location wherein defendant/respondent functions wholly. |
| 3.  Location where cause of action arose. | 9.  Location where one or more of the parties reside. |
| 4.  Location where bodily injury, death or damage occurred. | 10.  Location of Labor Commissioner Office. |
| 5.  Location where performance required, or defendant resides. | 11.  Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6.  Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist - Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct - Sexual Abuse Case (in any form) | 1, 4 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Zamperini Airfield Preservation Society v. City of Torrance, et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury / Property Damage / Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord - Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability - Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice - Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non – Personal Injury / Property Damage / Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach - Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case - Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case - Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case - COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Zamperini Airfield Preservation Society v. City of Torrance, et al. | |

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer - Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer - Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer - Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer - Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☒ 0201 Writ - Administrative Mandamus | ②, 8 |
| | | ☐ 0202 Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Zamperini Airfield Preservation Society v. City of Torrance, et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation (Continued)** | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Zamperini Airfield Preservation Society v. City of Torrance, et al. | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON: ☐ 1. ☒ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | ADDRESS: 3031 Torrance Blvd. |
|---|---|
| CITY: Torrance | STATE: CA | ZIP CODE: 90503 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the CENTRAL District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: April 22, 2024

_____ (SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>04/22/2024<br><br>David W. Slayton, Executive Officer / Clerk of Court<br><br>By: _____S. Ruiz_____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>24STCP01278 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Stephen I. Goorvitch | 82 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record    David W. Slayton, Executive Officer / Clerk of Court

on _04/22/2024_____    By _S. Ruiz_____, Deputy Clerk
        (Date)

LACIV 190 (Rev 6/18)    **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

Electronically FILED by
Superior Court of California,
County of Los Angeles
4/22/2024 6:21 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Bolden, Deputy Clerk

1  **Stan M. Barankiewicz II, Esq. (State Bar No. 204513)**
   **ORBACH HUFF & HENDERSON LLP**
2  **1901 Avenue of the Stars, Suite 575**
   **Los Angeles, California 90067-6007**
3  **Telephone:  (310) 788-9200**
   **Facsimile:  (310) 788-9210**
4  **sbarankiewicz@ohhlegal.com**

5  Attorneys for Petitioner
   ZAMPERINI AIRFIELD PRESERVATION SOCIETY
6

7            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8        **FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT**

9

10 ZAMPERINI AIRFIELD PRESERVATION          CASE NO.: 24STCP01278
   SOCIETY, a California unincorporated
11 association,                              UNLIMITED JURISDICTION

12                Petitioner,               [Assigned to Hon. Stephen I. Goorvitch, Dept
                                            82, for all purposes.]
13 v.
                                            **PETITIONER ZAMPERINI AIRFIELD**
14 CITY OF TORRANCE, a California municipal  **PRESERVATION SOCIETY'S**
   corporation and ROES 1 through 100,      **REQUEST TO CITY OF TORRANCE TO**
15                                          **PREPARE ADMINISTRATIVE RECORD**
                  Respondents.
16                                          Petition Filed:        April 22, 2024

17

18

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

ORBACH HUFF & HENDERSON LLP

                                    1
                   REQUEST TO PREPARE ADMINISTRATIVE RECORD

1  Pursuant to Code of Civil Procedure section 1094.6(c) and Government Code section 111523,

2  Petitioner, ZAMPERINI AIRFIED PRESERVATION SOCIETY ("ZAPS") hereby requests that

3  Respondent CITY OF TORRANCE ("City") prepare, serve, and lodge the City's administrative record

4  in the above-captioned case, as it relates to the City's considering, adopting, and passing Ordinance

5  No. 3930, An Ordinance of the City Council of the City of Torrance, California, Amending Article 5

6  "Touch (and Stop) and Go, Full Stop-Taxi Back and Low Approaches" of Chapter 1, Division 5 of

7  the Torrance Municipal Code" and promulgation of Torrance Municipal Code sections 51.5.1 through

8  51.5.7 implementing Ordinance No. 3930. The administrative record must include, but not be limited

9  to, all records relied upon by the City, including, all supporting agendas, staff reports, exhibits, a

10  transcript of the video-taped recording of the administrative proceedings, memorandums,

11  communications, notes and all other supporting documents relied upon by City in its consideration

12  and final adoption and passage of Ordinance No. 3930 on February 6, 2024 and the implementing

13  Torrance Municipal Code sections 51.5.1 through 51.5.7.

14  Additionally, Petitioner requests that City provide a cost estimate for the preparation of the

15  administrative record.

16  Upon completion, please deliver to the undersigned a copy of the administrative record.

17

18  DATED:  April 22, 2024                    ORBACH HUFF & HENDERSON LLP

19

20  By: _____

21  Stan M. Barankiewicz II, Esq.
    Attorneys for Petitioner
22  ZAMPRINI AIRFIELD PRESERVATION SOCIETY

23

24

25

26

27

28

# SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

Stanley Mosk Courthouse

111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF(S):

ZAMPERINI AIRFIELD PRESERVATION SOCIETY

DEFENDANT(S):

CITY OF TORRANCE

**NOTICE OF TRIAL SETTING CONFERENCE AND ATTACHED ORDERS THEREON**

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

04/25/2024

David W. Slayton, Executive Officer / Clerk of Court

By: _____ C. Del Rio _____ Deputy

CASE NUMBER:

24STCP01278

You are hereby notified that the above matter has been set for trial setting conference on 07/31/2024 at 9:30 AM in Department 82 of the above-entitled court.

You are ordered to give notice of this hearing and serve a copy of this notice to all parties to the action within 10 days of service of this notice.

David W. Slayton, Executive Officer / Clerk of Court

Date: 04/25/2024

By, C. Del Rio _____

Deputy Clerk

**NOTICE OF TRIAL SETTING CONFERENCE AND ATTACHED ORDERS THEREON**

LACIV XXX
LASC Approved 00/00

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>04/25/2024<br>David W. Slayton, Executive Officer / Clerk of Court<br>By _____ C. Del Rio _____ Deputy |
| PLAINTIFF/PETITIONER:<br>ZAMPERINI AIRFIELD PRESERVATION SOCIETY | |
| DEFENDANT/RESPONDENT:<br>CITY OF TORRANCE | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>24STCP01278 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Trial Setting Conference and Attached Orders Thereon upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.


Stan M. Barankiewicz
ORBACH HUFF & HENDERSON LLP
1901 Avenue of the Stars, Suite 575
Los Angeles, CA 90067


David W. Slayton, Executive Officer / Clerk of Court

Dated: 04/25/2024

By: C. Del Rio
        Deputy Clerk


**CERTIFICATE OF MAILING**

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

MAY 03 2019

Sherri R. Carter, Executive Officer/Clerk

By_____,Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE LOS ANGELES SUPERIOR COURT ) <br> — MANDATORY ELECTRONIC FILING ) <br> FOR CIVIL ) <br> ) <br> ) <br> ) <br> _____ ) | FIRST AMENDED GENERAL ORDER |

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) **DEFINITIONS**

   a) **"Bookmark"**  A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"**  The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"**  A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"**  Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

2019-GEN-014-00

e) **"Electronic Filing Service Provider"**   An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.   (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**   For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**   An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**   A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

   a) Trial Court Records

   Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

   b) Represented Litigants

   Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

   c) Public Notice

   The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

2019-GEN-014-00

d) Documents in Related Cases

   Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) EXEMPT LITIGANTS

   a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

   b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) EXEMPT FILINGS

   a) The following documents shall not be filed electronically:

      i)    Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

      ii)   Bonds/Undertaking documents;

      iii)  Trial and Evidentiary Hearing Exhibits

      iv)   Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

      v)    Documents submitted conditionally under seal.  The actual motion or application shall be electronically filed.  A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

   b) Lodgments

   Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form.  The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

2019-GEN-014-00

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

   Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

   a) Electronic documents must be electronically filed in PDF, text searchable format **when** technologically feasible without impairment of the document's image.

   b) The table of contents for any filing must be bookmarked.

   c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

   d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

      i) Depositions;

      ii) Declarations;

      iii) Exhibits (including exhibits to declarations);

      iv) Transcripts (including excerpts within transcripts);

      v) Points and Authorities;

      vi) Citations; and

      vii) Supporting Briefs.

   e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

   f) Accompanying Documents

      Each document acompanying a single pleading must be electronically filed as a **separate** digital PDF document.

   g) Multiple Documents

      Multiple documents relating to one case can be uploaded in one envelope transaction.

2019-GEN-014-00

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.   (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

2019-GEN-014-00

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing.  A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9)  PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled.  If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

   i)    Any printed document required pursuant to a Standing or General Order;

   ii)   Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

   iii)  Pleadings and motions that include points and authorities;

   iv)   Demurrers;

   v)    Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

   vi)   Motions for Summary Judgment/Adjudication; and

   vii)  Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents.  Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10)  WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver.  (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and  California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

6

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

2019-GEN-014-00

11) SIGNATURES ON ELECTRONIC FILING

For purposes of this General Order, all electronic filings must be in compliance with California

Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil

Division of the Los Angeles County Superior Court.

      This First Amended General Order supersedes any previous order related to electronic filing,

and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

Supervising Judge and/or Presiding Judge.

DATED: May 3, 2019



KEVIN C. BRAZILE
Presiding Judge

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

 **Superior Court of California, County of Los Angeles**

---

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or decision by a judge or jury.

### Main Types of ADR
1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

## How to Arrange Mediation in Los Angeles County

Mediation for **civil cases** is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Assistant Case Manager Janet Solis, janet@adrservices.com (213) 683-1600
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

   **These organizations cannot accept every case and they may decline cases at their discretion.** They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

   **NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate, or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs.** Los Angeles County-funded agencies provide mediation services on the day of hearings in small claims, unlawful detainer (eviction), civil harassment, and limited civil (collections and non-collection) cases. https://dcba.lacounty.gov/countywidedrp/

   **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case. https://my.lacourt.org/odr/

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit https://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit https://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website: https://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm