**Stan M. Barankiewicz II, Esq. (State Bar No. 204513)**
**ORBACH HUFF & HENDERSON LLP**
**1901 Avenue of the Stars, Suite 575**
**Los Angeles, California 90067-6007**
**Telephone: (310) 788-9200**
**Facsimile: (310) 788-9210**
**sbarankiewicz@ohhlegal.com**

Attorneys for Plaintiff/Petitioner
ZAMPERINI AIRFIELD PRESERVATION SOCIETY

# UNITED STATES DISTRICT COURT

# CENTRAL  DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZAMPERINI AIRFIELD PRESERVATION SOCIETY, a California unincorporated association,<br><br>Plaintiff/Petitioner,<br><br>v.<br><br>CITY OF TORRANCE, a California municipal corporation and ROES 1 through 100,<br><br>Defendants/Respondents. | CASE NO.: 2:24-cv-04538-CBM-JPR<br><br>[Assigned to District Judge Consuelo B. Marshall and Magistrate Judge Jean P. Rosenbluth]<br><br>**PLAINTIFF/PETITIONER ZAMPERINI AIRFIELD PRESERVATION SOCIETY'S REPLY BRIEF IN SUPPORT OF WRIT OF MANDATE**<br><br>Date:     October 21, 2025<br>Time:    10:00 a.m.<br>Dept:    8D<br>Judge:  Hon. Consuelo B. Marshall<br><br>Petition Filed:        April 22, 2024 |

ORBACH HUFF & HENDERSON LLP

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS...................................................................................2

TABLE OF AUTHORITIES ...........................................................................3

MEMORANDUM OF POINTS AND AUTHORITIES..........................................6

I.     INTRODUCTION ................................................................................6

II.    THE CITY ADMITS THAT IT SEEKS TO DECREASE THE
       VOLUME OF FLIGHTS TRAVELING ABOVE THE AIRPORT .............7

III.   THE CITY'S EXISTING MUNICIPAL CODE RESTRICTIONS ON
       FLIGHT OPERATIONS DO NOT INSULATE THE TOUCH & GO
       ORDINANCE FROM JUDICIAL CHALLENGE .................................8

IV.    FEDERAL PREEMPTION OF AIRCRAFT IN FLIGHT PATTERNS ........9

V.     THE FEDERAL GOVERNMENT'S POWER OVER NAVIGABLE
       AIRSPACE IS BROAD, LEAVING ONLY LIMITED AUTHORITY
       FOR LOCAL REGULATION .............................................................10

VI.    LIMITS OF THE PROPRIETOR EXCEPTION .....................................11

VII.   THE TOUCH & GO ORDINANCE IMPERMISSIBLY REGULATES
       FLYING AIRCRAFT AND IS PREEMPTED..........................................15

VIII.  THE TOUCH & GO ORDINANCE IS NOT A REASONABLE, NON-
       ARBITRARY, AND NON-DISCRIMINATORY EXERCISE OF
       PROPRIETOR AUTHORITY .............................................................15

IX.    THE TOUCH & GO ORDINANCE VIOLATES ANCA ..........................16

X.     ZAPS HAS STANDING TO ASSERT A VIOLATION OF FEDERAL
       LAW BY THE ADOPTION OF THE TOUCH & GO ORDINANCE........17

XI.    ZAPS IS ENTITLED TO INJUNCTIVE RELIEF .....................................19

XII.   THE STANDARD OF REVIEW CANNOT JUSTIFY THE TOUCH &
       GO ORDINANCE'S INTRUSION INTO THE PREEMPTED
       NAVIGABLE AIRSPACE ..................................................................19

XIII.  CONCLUSION ..................................................................................20

CERTIFICATE OF SERVICE...........................................................................22

CERTIFICATE OF COMPLIANCE....................................................................23

ORBACH HUFF & HENDERSON LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF/PETITIONER ZAPS' REPLY BRIEF IN SUPPORT OF WRIT OF MANDATE

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 222 (2d Cir. 2008).........17, 19

5

*Arapahoe County Public Airport Authority v. FAA*,
242 F.3d 1213 (10th Cir. 2001)..................................................................10, 14, 15

6

*Blue Sky Entertainment, Inc. v. Town of Gardiner*,
711 F.Supp. 678, (N.D.N.Y. 1989) ...............................................................14

7

*British Airways Bd. v. Port Auth. of New York*,
558 F.2d 75 (2nd Cir. 1977)........................................................10, 11, 13, 14

8

*City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624 (1973) .............9, 11, 13

9

*Delux Public Charter, LLC v. County of Orange*, 2022 WL 3574442 .......................19

10

*Ex Parte Young*, 209 U.S. 123 (1908) ...................................................17, 18, 19

11

*French v. Pan Am Express, Inc.*, 869 F.2d 1 (1st Cir.1989).........................................14

12

*Friends of the East Hampton Airport, Inc. v. Town of East Hampton*,
841 F.3d 133 (2d Cir. 2016)................................................ 15, 17, 18, 19, 20

13

*Griggs v. Allegheny County*, 369 U.S. 84 (1962) ...................................................11, 14

14

*Harrington v. City of Davis*, 16 Cal.App.5ths 420 (2017) .........................................20

15

*Horta, LLC v. City of San Jose*, 2008 WL 4067441 ...................................................17

16

*J. Arthur Properties, II, LLC v. City of San Jose*, 21 Cal.App.5th 480 (2018)...........20

17

*Montalvo v. Spirit Airlines*, S08 F.3d 464 (9th Cir. 2007) ........................................14

18

*National Helicopter Corp. of America v. City of New York*,
137 F.3d 81 (2d Cir. 1998)................................................................12, 13

19

*Ohio House LLC v. City of Costa Mesa*, 135 F.4th 645 (9th Cir. 2024).....................20

20

*Orthopaedic Hosp. v. Bleshe*, 013 F.3d 1491 (1997)................................................20

21

*Public Lands for the People, Inc. v. U.S. Dept. of Agriculture*,
697 F.3d 1192 (9th Cir. 2012)...........................................................20

22

*San Diego Unified Port Dist. v. Gianturco*, 651 F.2d 1306 (9th Cir. 1981)..........12, 14

23

*Santa Monica Airport Ass'n v. City of Santa Monica*, 659 F.2d 100 (9th Cir. 1981) ..12

24

*Save Our Heritage Organisation v. City of San Diego*, 237 Cal.App.4th 163 (2015) .20

25

*Save Our Skies LA v. FAA*, 50 F.4th 854 (9th Cir. 2022) ......................................... 9

26

27

28

ORBACH HUFF & HENDERSON LLP

*Tutor v. City of Hailey, Idaho*, 2004 WL 344437 (2004)..............................................18

*Western Air Lines In. v. Port Auth. of New York and New Jersey*, 658 F.Supp. 952
(S.D. NY 1986)..............................................................................................................11, 14

**Statutes**

49 U.S.C., § 40103(a)(1)..........................................................................................13

49 U.S.C., § 40103(b)(1)..........................................................................................15

**Other Authorities**

FAA Order 5190.6B, Airport Compliance Manual, Ch.13.2(a)(3) ..........................12

FAA Order 5190.6B, Airport Compliance Manual, Ch.13.2(b)(1) ..........................12

FAA Order 5190.6B, Airport Compliance Manual, Ch.13.3 ...................................12

**Regulations**

14 C.F.R., § 61.56(a) ...............................................................................................18

14 C.F.R., § 91.153 ....................................................................................................9

14 C.F.R., § 91.155 ....................................................................................................9

14 C.F.R., § 91.157 ....................................................................................................9

14 C.F.R., § 91.159 ....................................................................................................9

14 C.F.R., § 91.161 ....................................................................................................9

14 C.F.R., § 91.167 ....................................................................................................9

14 C.F.R., § 91.169 ....................................................................................................9

14 C.F.R., § 91.171 ....................................................................................................9

14 C.F.R., § 91.173 ....................................................................................................9

14 C.F.R., § 91.175 ....................................................................................................9

14 C.F.R., § 91.176 ....................................................................................................9

14 C.F.R., § 91.177 ....................................................................................................9

14 C.F.R., § 91.179 ....................................................................................................9

14 C.F.R., § 91.180 ....................................................................................................9

14 C.F.R., § 91.181 ....................................................................................................9

14 C.F.R., § 91.183 ....................................................................................................9

14 C.F.R., § 97.20 ......................................................................................................9

ORBACH HUFF & HENDERSON LLP

PLAINTIFF/PETITIONER ZAPS' REPLY BRIEF IN SUPPORT OF WRIT OF MANDATE

ORBACH HUFF & HENDERSON LLP

| | |
|---|---|
| 14 C.F.R., § 121.91 | 9 |
| 14 C.F.R., § 121.93 | 9 |
| 14 C.F.R., § 121.95 | 9 |
| 14 C.F.R., § 121.97 | 9 |
| 14 C.F.R., § 121.99 | 9 |
| 14 C.F.R., § 121.101 | 9 |
| 14 C.F.R., § 121.103 | 9 |
| 14 C.F.R., § 121.105 | 9 |
| 14 C.F.R., § 121.106 | 9 |
| 14 C.F.R., § 121.107 | 9 |
| 14 C.F.R., § 121.189 | 9 |
| 14 C.F.R., § 121.555 | 9 |
| 14 C.F.R., § 135.341 | 18 |
| 14 C.F.R., § 161.5 | 16 |
| 14 C.F.R. Part 71 | 9 |

PLAINTIFF/PETITIONER ZAPS' REPLY BRIEF IN SUPPORT OF WRIT OF MANDATE

ORBACH HUFF & HENDERSON LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff and Petitioner Zamperini Airfield Preservation Society ("ZAPS") respectfully submits this Reply Brief in response to Defendant and Respondent City of Torrance's ("City") Opposition to the Motion for Writ of Mandate.

## I.     INTRODUCTION

The City's legal authority to regulate flight operations at Zamperini Airfield aka Torrance Municipal Airport ("Airport") is extremely limited. Ordinance No. 3930 ("Touch & Go Ordinance") exceeds the bounds of that limited authority by regulating flying aircraft. The City's defense of the Touch & Go Ordinance rests on a misapplication of the airport proprietor exception ("proprietor exception") to federal preemption and a mischaracterization of the scope of permissible local regulation under federal aviation law.

The Touch & Go Ordinance impermissibly goes beyond the limited airport proprietor's rights that allow for governing noise on the ground at an airport. The Touch & Go Ordinance was adopted exclusively to regulate and limit flying aircraft in the traffic patterns—an area of exclusive federal jurisdiction. The proprietor exception does not extend to such airborne operations. All of the cases relied on by the City fall short of authorizing an airport proprietor to regulate navigable airspace and aircraft operations that include flight in a traffic pattern.  Instead, most of them preempted the proprietor's attempt to regulate noise.

The Touch & Go Ordinance is de facto unreasonable and arbitrary because it intrudes upon the exclusive jurisdiction of the federal government and the Federal Aviation Administration ("FAA"). The Touch & Go Ordinance severely limits flight training operations at the Airport and is thus unreasonable, arbitrary, and discriminatory.

As discussed below, ZAPS has demonstrated its standing to assert a violation of the Airport Noise Capacity Act of 1990 ("ANCA") and for a writ of mandate/injunction because the equity of asserting a pre-enforcement defense to the Touch & Go Ordinance

is authorized. This right exists even though ANCA does not specify a private right of action.

Accordingly, ZAPS respectfully requests this Court to issue a writ of mandate directing the City to vacate the Touch & Go Ordinance and to issue an injunction prohibiting the City from enforcing the Touch & Go Ordinance.

## II.    THE CITY ADMITS THAT IT SEEKS TO DECREASE THE VOLUME OF FLIGHTS TRAVELING ABOVE THE AIRPORT

To support its actions, the City admits that the Touch & Go Ordinance is intended to limit operations and noise, citing to numerous complaints in the Administrative Record from neighbors complaining about noise from aircraft overflight. Dkt 31, Brief in Opposition ("Opp.") p. 7, 16-17. However, that noise is from aircraft flying overhead in the pattern, rather than noise from aircraft on the ground at the Airport. *Id*. Notably, the City believes the noise is from flight school aircraft. Opp. p. 7.

The City's motive in passing the Touch & Go Ordinance was to placate these neighbors' complaints. Clearly, the Touch & Go Ordinance was designed and intended to regulate aircraft overflight to address these complaints. The City's improper intent is further borne out by the breadth of other restrictions it has placed on flight operations, all designed to reduce noise from aircraft overflight over the years.

The City asserts that it worked with the FAA through the process of passing the Touch & Go Ordinance. Opp. p. 8. This appears to be an off-handed comment to placate people at a public hearing. The only engagement and meeting with the FAA were related to the City's left turn ban, which the FAA determined violated federal law. AR05818. There is no evidence in the record that the City was working with or otherwise engaging with the FAA relating to its passage of the Touch & Go Ordinance. In fact, the City believed that a restriction on training flights, as it adopted in the Touch & Go Ordinance, would violate ANCA and the City could not obtain FAA approval for these restrictions. AR04385-86; *see also* Opening Brief, p. 29. Despite this belief, it proceeded to adopt the Touch & Go Ordinance.

ORBACH HUFF & HENDERSON LLP

Clearly, the City intended the Touch & Go Ordinance to reduce noise and frequency of overflight. However, restricting legitimate flight operations is not a permissible means of addressing noise from aircraft overflight. There are procedures mandated by the FAA that the City must follow if it believes noise is excessive. The City admits that the FAA has been successful in significantly reducing aircraft noise since the 1970's. Herrera Decl, ¶16. Obviously, this success in reducing overflight noise is what the neighbors desire. However, instead of allowing the FAA, the federal entity with exclusive jurisdiction over the navigable airspace, to continue its work, the City took it upon itself, as a vigilante, to impermissibly circumvent federal law and procedure by adopting the Touch & Go Ordinance.

## III.  THE CITY'S EXISTING MUNICIPAL CODE RESTRICTIONS ON FLIGHT OPERATIONS DO NOT INSULATE THE TOUCH & GO ORDINANCE FROM JUDICIAL CHALLENGE

The City argues that the restrictions under the Touch & Go Ordinance have been in place in similar form for decades. However, lack of challenge does not make a law valid. Our history is replete with examples of laws existing for decades or even centuries, without challenge, before they were declared unconstitutional by the courts. Those unconstitutional laws regrettably persist until eventually challenged. A lack of legal challenge prior to this action in no way conveys imprimatur on the Touch & Go Ordinance.

Furthermore, the lack of an FAA amicus brief in support of ZAPS' Motion cannot be viewed as tacit approval of the Touch & Go Ordinance.  Amicus briefs are rare at the district court level, and the FAA does not have sufficient staffing to track every ordinance passed by local agencies to determine whether it is an impermissible restriction on flight operations. When the federal government participates in a case, it is almost always done at the circuit court level. Notably, the Department of Justice did

ORBACH HUFF & HENDERSON LLP

1    file an Amicus Curiae Brief in a recent preemption case before the Ninth Circuit.[1]

2    Significantly, the City did not seek FAA approval for the Touch & Go Ordinance,

3    though it should have under ANCA. Based on the Administrative Record, the City

4    believed it would not receive approval for the Touch & Go Ordinance because it would

5    violate ANCA. AR04385-86. Obviously, the City failed to seek that approval because

6    the FAA would have determined that it was invalid.

7    ## IV.    FEDERAL PREEMPTION OF AIRCRAFT IN FLIGHT PATTERNS

8    The City's argument that the Touch & Go Ordinance is a valid exercise of its

9    proprietor authority ignores the fundamental distinction between ground-based airport

10   operations and aircraft in flight.  Title 49 United States Code section 40103(b) addresses

11   "the use of the navigable airspace" and provides in subsection (b)(2) that "[t]he

12   Administrator shall proscribe air traffic regulations on the flight of aircraft (including

13   regulations on safe altitudes) for … protecting individuals and property on the ground."

14   Pursuant to that authority, the FAA "has established flight-path procedures for aircraft"

15   that ensure "the safety and efficiency of air traffic." *Save Our Skies LA v. FAA*, 50 F.4th

16   854, 856-57 (9th Cir. 2022). The procedures "specify the steps pilots must take in

17   departing from or arriving at airports, such as where to turn, where to ascend or descend,

18   and at what speeds to fly." *Id*. at 857; *see* 14 C.F.R. pt. 71 (designating air traffic service

19   routes); *id*. §§ 91.153-.183 (providing detailed rules regarding flight path, altitude, and

20   takeoff and landing for various types of flights); *id*. § 97.20 (providing takeoff

21   minimums and obstacle departure procedures); *id*. §§ 121.91-.107, 121.555 (governing

22   routes that commercial air carriers may fly); and *id*. § 121.189 (detailing takeoff

23   requirements).

24   Further, the Supreme Court in *City of Burbank v. Lockheed Air Terminal, Inc.*,

25   411 U.S. 624, 633 (1973), held that local regulation of aircraft noise is preempted when

26

27   _____

28   [1] *Codoni v. Port of Seattle* (Case: 25-2830, Dkt. 31.1) dealing with the preemption interplay between the Clean Air Act, Airline Deregulation Act, and the Federal Aviation Act.

ORBACH HUFF & HENDERSON LLP

it affects aircraft in flight, citing the pervasive federal scheme governing navigable airspace.  "The courts have held that the Federal Government presently preempts the field of noise regulation insofar as it involves controlling the flight of aircraft." *Id.* at 634.

The Touch & Go Ordinance prohibits touch-and-go, stop-and-go, low approach, and full stop-taxi back operations—activities that inherently involve aircraft in flight and in the patterns.  These prohibitions are not purely ground-based operations; they involve aircraft maneuvering in federally controlled airspace. As such, they fall squarely within the domain of federal regulation and are absolutely preempted.

The City's attempt to characterize these operations as "ground-based" is contradicted by its own definitions in the Touch & Go Ordinance, which acknowledge that low approaches and touch-and-go operations involve aircraft flying over the airport without landing or stopping. Opp. pp. 8-9.

## V. THE FEDERAL GOVERNMENT'S POWER OVER NAVIGABLE AIRSPACE IS BROAD, LEAVING ONLY LIMITED AUTHORITY FOR LOCAL REGULATION

It is clear from the legislative history of the 1986 amendment to the Federal Aviation Act that Congress intended the statute to "strengthen the FAA's regulatory role within the area already totally preempted control of flights through navigable airspace." *British Airways Bd. v. Port Auth. of New York*, 558 F.2d 75, 83-84 (2nd Cir. 1977). Congress did preserve a state or local public agency's right as a proprietor, but only as to "issuing regulations or establishing requirements as to the permissible level of noise which can be created by aircraft using the airport." *Id.* at 84. "The precise scope of an airport owner's proprietary powers has not been clearly articulated by any court. Courts have, however, recognized that local proprietors play an extremely limited role in the regulation of aviation." *Arapahoe County Public Airport Authority v. FAA*, 242 F.3d 1213, 1222 (10th Cir. 2001), quotation marks and citations omitted. To the extent the Touch & Go Ordinance is not within the limited scope of the proprietor's exception,

ORBACH HUFF & HENDERSON LLP

1    it is prohibited.

2    ## VI.    LIMITS OF THE PROPRIETOR EXCEPTION

3    The City argues, under the guise of regulating noise and limiting its nuisance
4    liability, that its rights under the proprietor exception can extend to flight patterns
5    because of its liability for nuisance from aircraft noise. The proprietor exception is very
6    narrow and only has an "'***extremely limited role***' in the system of aviation regulation."
7    *Western Air Lines In. v. Port Auth. of New York and New Jersey*, 658 F.Supp. 952, 953
8    (S.D. NY 1986), citing *British Airways Bd. v. Port Auth.*, 564 F.2d 1002 (2d Cir. 1977),
9    emph. added. Although the courts have recognized that potential nuisance liability is a
10   basis for the proprietor exception, that does not extend to flying aircraft—aircraft in a
11   pattern, which is part of the preempted airspace. The City has admitted that it has no
12   jurisdiction over flying aircraft.  "Any complaints related to flight paths, including low-
13   flying aircraft, needs to be reported directly to the FAA for investigation, as again the
14   City does not have jurisdiction over aircraft in flight." AR02331. Additionally, the City
15   admitted that only the FAA can regulate flight patterns. "[T]he City recognizes that the
16   Federal Aviation Administration (FAA) is responsible for handling all aircraft flight
17   patterns…." AR01977.

18   The proprietor exception, recognized in *Griggs v. Allegheny County*, 369 U.S. 84
19   (1962), and *City of Burbank*, allows local regulation of airport noise only to the extent
20   it does not interfere with aircraft in flight. Courts have consistently held that this
21   exception is narrow and applies only to reasonable, non-arbitrary, and non-
22   discriminatory restrictions on ground operations.  The Supreme Court in *City of*
23   *Burbank*, held that local regulation of aircraft noise is preempted when it intrudes into
24   the domain of aircraft operations in navigable airspace. The Touch & Go Ordinance
25   regulates touch-and-go, stop-and-go, and low approach operations—all of which are
26   flight operations involving aircraft in flight patterns and are thus subject to exclusive
27   federal control under 49 United States Code section 40103(b).  The FAA has
28   consistently stated this, and the City's reliance on FAA Order 5190.6B is misplaced:

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

"State and local governments may protect their citizens through land use controls and other police power measures not affecting airspace management or aircraft operations." FAA Order 5190.6B, Airport Compliance Manual, Ch.13.2(a)(3), p. 13-1.

"The federal government has the authority and responsibility to control aircraft noise by the regulation of source emissions, by flight operational procedures, and by management of the air traffic control system and navigable airspace in ways that minimize noise impact on residential areas, consistent with the highest standards of safety and efficiency." FAA Order 5190.6B, Airport Compliance Manual, Ch.13.2(b)(1), p. 13-1.

"The federal government, through this exercise of its constitutional and statutory powers, has preempted the areas of airspace use and management, air traffic control and aviation safety." FAA Order 5190.6B, Airport Compliance Manual, Ch.13.3, p. 13-3.

Further, the FAA has expressed this in its correspondence as well:

"Federal law and policy distinguish between ground-based measures (generally consistent with an airport's proprietary authority) and restrictions directing how aircraft may operate in the navigable airspace (***expressly an FAA function beyond the authority of an airport proprietor***)." AR05817, emph. added.

The City relies heavily on *Santa Monica Airport Ass'n v. City of Santa Monica*, 659 F.2d 100 (9th Cir. 1981), and *San Diego Unified Port Dist. v. Gianturco*, 651 F.2d 1306 (9th Cir. 1981), to support its claim of authority. However, both cases involved airports with federal grant obligations and were limited to ground-based restrictions. The Airport, by contrast, is not subject to federal grant assurances, and the Touch & Go Ordinance regulates aircraft in flight patterns, not merely ground operations.

Further, the City's reliance on *National Helicopter Corp. of America v. City of New York*, 137 F.3d 81 (2d Cir. 1998) is misplaced.    *National Helicopter* involved curfews at a heliport and did not address fixed-wing aircraft in flight patterns. The FAA previously admonished the City's lawyers for attempting to rely on *National Helicopter*:

"*National Helicopter* directly addresses the question of whether a State or local government acting as an airport proprietor has the authority to regulate in-flight aircraft operations. There, the court reviewed a series of noise mitigation measures (e.g., weekday and weekend curfews) enacted by the City under its proprietary authority as owner of Manhattan's East 34th Street Heliport. One of the noise measures analyzed by the court included an in-flight operational restriction — a prohibition of sightseeing flights over Second Avenue and the requirement that such flights heading north and south fly only over the East and Hudson Rivers. The City argued that the invasive nature of helicopter noise justified the condition restricting a sightseeing aircraft's direction of flight and route in the airspace. The Second Circuit disagreed:

> [t]his argument, as the trial court recognized, evidences a misunderstanding of federal aviation law. Congress, the Supreme Court, and we have consistently stated that the law controlling flight paths through navigable airspace is completely preempted. See, e.g., [*British Airways*] *Concorde I*, 558 F.2d at 83 ("[L]egitimate concern for safe and efficient air transportation requires that exclusive control of airspace management be concentrated at the national level."); *City of Burbank*, 411 U.S. at 626-27 at 1856-57 (recognizing the federal government's possession of exclusive national sovereignty in U.S. airspace); 49 U.S.C. § 40103(a)(1) ... *The proprietor exception, allowing reasonable regulations to fix noise levels at and around an airport at an acceptable amount, gives no authority to local officials to assign or restrict routes.* As a result, the City unlawfully intruded into a preempted area when it curtailed routes for the flights of certain Heliport aircraft. This condition was properly enjoined." AR05817-8.

In any event, *National Helicopter* cannot be used to overthrow *City of Burbank*. "State and local governments will remain unable to use their police powers to control aircraft noise by regulating the flight of aircraft." *Id*. at 635.

None of the other of the City's cases directly address whether the proprietor exception can extend to aircraft in a pattern. In *City of Burbank*, the ordinance imposed a night curfew on take offs. *Id*. at 625-26 (which was preempted). In *Arapahoe County*

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

1    *Pub. Airport Auth. v. FAA*, 242 F.3d 1213, 1216 (10th Cir. 2001), the airport authority

2    completely banned all scheduled air carrier service. The Tenth Circuit held that the ban

3    was preempted and the need for a ban was entirely speculative. *Id*. at 1223.  In *British*

4    *Airways Bd. v. Port Auth. of New York*, 558 F.2d 75, 81 (2d Cir. 1977), the port authority

5    banned the Concorde from Kennedy Airport pending a six-month study. The Second

6    Circuit remanded the case back to the district court to determine the reasonableness of

7    the temporary ban. *Id*. at 86. In *Gianturco*, at page 1309, the port district was directed

8    by the state to extend a night curfew on take offs. The Ninth Circuit upheld the district

9    court's ruling that the extended curfew could not be imposed. *Id*. at 1308. In *Griggs,* at

10   page 87, a liability for takings case dealt with an approach path to the airport that was

11   so close to the glide path that the Airline Pilot Association admitted, "'If we had engine

12   failure we would have no course but to plow into your house.'" Planes taking off were

13   at times only 30 feet above the petitioner's house. *Ibid*. None of these circumstances are

14   at play here.  In *Western*, the port authority imposed a perimeter rule to forbid airlines

15   from using LaGuardia to run nonstop flights beyond a set distance. *Id*. at 958. The

16   purpose of the perimeter rule was not to regulate noise, but to manage on-ground

17   congestion at the airport. *Ibid*.  In contrast to all of these cases cited by City, City is

18   impermissibly regulating flying aircraft in the patterns through the Touch & Go

19   Ordinance.

20       The FAA has not been silent, as is clear from the record. The FAA cited caselaw

21   supporting its position that airspace regulation is preempted. "Federal courts have found

22   that a navigable airspace free from inconsistent state and local restrictions is essential

23   to the maintenance of a safe and sound air transportation system. *See Montalvo v. Spirit*

24   *Airlines*, S08 F.3d 464 (9th Cir. 2007), and *French v. Pan Am Express, Inc*., 869 F.2d 1

25   (1st Cir.1989)."  AR01981. "See *Blue Sky Entertainment, Inc. v. Town of Gardiner,* 711

26   F.Supp. 678, 692 (N.D.N.Y. 1989) "('[i]n fact, federal law in the area of aviation is *so*

27   pervasive that it preempts a municipal ordinance which attempts to govern the flight

28   paths of aircraft using an airport which has no control tower, is not served by a certified

carrier and has no regularly scheduled flights[.]'" AR03568.

## VII.   THE TOUCH & GO ORDINANCE IMPERMISSIBLY REGULATES FLYING AIRCRAFT AND IS PREEMPTED

The City's own factual background in its Opposition Brief confirms that the Touch & Go Ordinance was adopted in response to noise complaints from aircraft flying repetitive patterns over residential areas.  Opp. p. 7:17-18 "noisy student pilot practice flights over Torrance homes, over and over and over!"; 7:21-22 "Airplane after airplane, roaring over my house"; 7:25-26 "The touch and go training flights mean low-flying student **pilots _repeatedly circling_ over Torrance neighborhoods and schools**." Emph. added. These complaints stem from airborne operations, not ground-based activities from the Airport. Even from the City's own evidence, the Touch & Go Ordinance was adopted with the improper purpose of limiting aircraft flight in the traffic patterns, which is a matter of exclusive federal concern.

The FAA has sole authority to regulate aircraft flight paths, altitudes, and operations in navigable airspace. 49 U.S.C., § 40103(b)(1). Local governments may not enact ordinances that interfere with these operations, regardless of whether they are framed as noise control measures.  But this is exactly what the City is doing, and must be preempted.

## VIII.   THE TOUCH & GO ORDINANCE IS NOT A REASONABLE, NON-ARBITRARY, AND NON-DISCRIMINATORY EXERCISE OF PROPRIETOR AUTHORITY

It is agreed that an airport proprietor's regulations must be "reasonable, nonarbitrary, and nondiscriminatory." *Arapahoe County Public Airport Auth. v. F.A.A.,* 242 F.3d 1213, 1223 (10th Cir. 2001). The FAA must ensure that local restrictions do not unjustly discriminate or burden access. *Ibid*. But this does not justify or authorize intruding into preempted areas, such as preempted navigable airspace.  Indeed, "actions taken in violation of legal mandates are, by their nature unreasonable and arbitrary." *Friends of the East Hampton Airport* at p. 153.

ORBACH HUFF & HENDERSON LLP

The City's claim that the Touch & Go Ordinance is reasonable and non-discriminatory is undermined by its selective targeting of training operations, which disproportionately affects flight schools and student pilots. To impose a local control that prohibits a pilot who is training and not against a pilot who is not training is clearly discriminatory. The Touch & Go Ordinance bans common training maneuvers without evidence of a narrowly tailored solution or consideration of less restrictive alternatives, which makes it discriminatory.

## IX.    THE TOUCH & GO ORDINANCE VIOLATES ANCA

As discussed on pages 31 through 35 of our Opening Brief, the Touch & Go Ordinance violates ANCA by regulating Stage 2 and 3 aircraft before going through ANCA's procedural requirements. The Touch & Go Ordinance makes no distinction as to the type of aircraft its restrictions apply to, so it applies to all types of aircraft **using** the Airport, including any Stage 2 and 3 aircraft that land or takeoff from the Airport. The City admits it did not comply with ANCA's procedural requirements but argues it did not violate ANCA (citing no supporting authority) because there are no Stage 2 or 3 aircraft based at the Airport to apply it to. As a result, the City concludes that the Touch & Go Ordinance does not regulate Stage 2 and 3 aircraft. This is a stretch of logic that goes too far for the following four reasons.

First, the City ignores the fact that helicopters, which are based at the Airport, are Stage 2 aircraft. 14 C.F.R., § 161.5 defines Stage 2 aircraft being shown to comply with Stage 2 requirements under 14 C.F.R. part 36; 14 C.F.R. § 36, Subpart H and Appendix H cover Noise Requirements for helicopters. Second, ANCA applies to restrictions on the operation of Stage 2 and 3 aircraft—period. Third, nothing in ANCA says that it only applies to airports that have Stage 2 or 3 aircraft based there. Fourth, because the Touch & Go Ordinance's blanket prohibition would regulate any transient Stage 2 or 3 aircraft using the Airport, ANCA's procedural requirements are required to be met before the restriction could be imposed.

Although it is unsettled whether ANCA applies to non-stage aircraft, this is

16

ORBACH HUFF & HENDERSON LLP

ultimately immaterial to the determination that the Touch & Go Ordinance violates ANCA. If non-stage aircraft are included within the scope of ANCA, then the City is prohibited from enacting noise regulations unless they comply with the specific requirements of ANCA. Alternatively, if non-stage aircraft are not within the scope of ANCA, then the authority to regulate those types of aircraft has not been ceded by the federal government and is still within its exclusive sovereignty to regulate navigable airspace, which likewise invalidates the Touch & Go Ordinance.

## X.    ZAPS HAS STANDING TO ASSERT A VIOLATION OF FEDERAL LAW BY THE ADOPTION OF THE TOUCH & GO ORDINANCE

This was explained in pages 16 and 17 of ZAPS' Opening Brief, citing *Ex Parte Young*, 209 U.S. 123 (1908), *Friends of the East Hampton Airport, Inc. v. Town of East Hampton*, 841 F.3d 133, 146 (2d Cir. 2016) and *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 222 (2d Cir. 2008). The City does not address these authorities and simply throws out other ones to harp on its claim that there is no private right of enforcement of ANCA.  The City's showcase is *Horta, LLC v. City of San Jose*, 2008 WL 4067441 (which is not reported in the F.Supp.2d (2008) and clearly states in bold letters at the beginning, "NOT FOR CITATION"), held that the plaintiff did have standing because "the city's enforcement of the curfew was 'arbitrary and capricious' was based on constitutional notions of procedural due process; it did not depend upon the existence of a private right of action under ANCA." *Id*. at *4. In *Friends of the East Hampton Airport*, the Second Circuit noted, "[A]ctions taken in violation of legal mandates are, by their nature, unreasonable and arbitrary."  *Id*. at 153.

The City also fails to address *Cuomo* that directly contradicts the City's inference that the FAA must commence a proceeding alleging non-compliance with ANCA. Opp. p. 20, fn. 4. In *Cuomo*, the Second Circuit held, "Air Transport's preenforcement challenge presents no problem of unripeness or other barriers to justiciability." *Id*. at 222.

Most significantly, the City fails to address *Ex Parte Young*, which held that the

ORBACH HUFF & HENDERSON LLP

Eleventh Amendment does not bar federal courts from enjoining state officials from taking official action claimed to violate federal law. *Id*. at 155-63. As explained in pages 16 and 17 in ZAPS' Opening Brief, the Second Circuit in *Friends of East Hampton Airport* interpreted *Ex Parte Young* to allow a plaintiff to assert a violation of federal law, even where no private right of action exists, where the plaintiff seeks to preclude a municipality from subjecting the plaintiff to a local law that violates a federal one. This is exactly the position that ZAPS is in and is asserting. The City will enforce the Touch & Go Ordinance against ZAPS members who would argue preemption as a defense.

The City makes the wild argument that ZAPS has no standing to challenge the Touch & Go Ordinance because no flight school has filed suit, and ZAPS cannot assert the rights of non-parties. Opp. p. 19:22-24. There is no evidence to support that ZAPS' members do not include flight schools. Moreover, all pilots routinely undergo ongoing training that involves doing touch-and-goes, stop-and-goes, taxi-backs, and low-approaches. *See, e.g.,* 14 C.F.R., § 61.56(a), which requires at least one hour of flight training every 24 calendar months; 14 C.F.R., § 135.341, which requires a recurrent flight training curriculum for the operator's pilots. ZAPS' membership includes pilots who are impacted by the Touch & Go Ordinance, which the City cannot reasonably refute. ZAPS does not need to prove that one or more of its members are a flight school.

As detailed above, the Touch & Go Ordinance is de facto arbitrary and capricious because it intrudes into an area that is preempted by Section 40103 and its progeny. Thus, ZAPS has standing to claim a violation of ANCA and obtain a writ of mandate/injunction directing the City to vacate and not enforce the Touch & Go Ordinance against ZAPS' members and all pilots using the Airport. Of keen validation is that ZAPS is only seeking to invalidate and enjoin the Touch & Go Ordinance, not to obtain damages as a result of an ANCA violation.

The City's reliance on *Tutor v. City of Hailey, Idaho*, 2004 WL 344437 (2004) (not reported in F.Supp.2d (2004)) is unavailing. *Tutor* failed to address *Ex Parte Young*

ORBACH HUFF & HENDERSON LLP

and precedes the contrary decisions in *Friends of East Hampton Airport* and *Cuomo*. The City's reliance on *Delux Public Charter, LLC v. County of Orange*, 2022 WL 3574442 (another case not reported in the Fed.Supp. (2022)), is also misplaced. The District Court did not consider *Ex Parte Young*, *Friends of East Hampton Airport*, or *Cuomo*, and thus, the *Delux* court's ruling is not binding.

The City's argument that ZAPS lacks standing ignores the principle that organizational plaintiffs may assert the rights of their members. ZAPS has alleged that its members are affected by the Touch & Go Ordinance and face enforcement risk, which satisfies Article III standing.

## XI.    ZAPS IS ENTITLED TO INJUNCTIVE RELIEF

City argues that ZAPS cannot get injunctive relief. This is untrue. ZAPS has already addressed its entitlement to injunctive relief in its Opening Brief. Opening Brief, pp. 13-14. The City does not address these authorities. Notably, in *Friends of East Hampton Airport*, the Second Circuit directly refutes the City's argument. The circuit court explained, "the Supreme Court has consistently recognized federal jurisdiction over declaratory- and injunctive-relief actions to prohibit the enforcement of state or municipal order alleged to violate federal law." *Id*. at 144. It continues: "In such circumstances, a plaintiff does not ask equity to create a remedy not authorized by the underlying law. Rather, it generally invokes equity preemptively to assert a defense that would be available to it in a state or local enforcement action." *Ibid*. Additionally, the City's discussion on injunctive relief applies to preliminary injunction, not a final injunction. There is no need to assess whether ZAPS is likely to succeed on the merits. If the Court grants the Motion, ZAPS will have succeeded on the merits.

## XII.    THE STANDARD OF REVIEW CANNOT JUSTIFY THE TOUCH & GO ORDINANCE'S INTRUSION INTO THE PREEMPTED NAVIGABLE AIRSPACE

The City goes to great pains to stress that its regulation of flying aircraft is entitled to due deference.  It cites *Ohio House LLC v. City of Costa Mesa*, 135 F.4th 645 (9th

ORBACH HUFF & HENDERSON LLP

Cir. 2024) and *Public Lands for the People, Inc. v. U.S. Dept. of Agriculture*, 697 F.3d 1192 (9th Cir. 2012) in support; however, both of the cases deal with an administrative agency interpreting its own regulations.  That is not what occurred here.  The City misinterpreted Title 49 United States Code section 40103 and its progeny in thinking that it could regulate aircraft overflight.  This is NOT the City interpreting its own regulations, it is the City interpreting federal law.  The City cites no case that the City is entitled to deference when interpreting federal law. Thus, there is also no presumption of correctness, and the City's citations to *Save Our Heritage Organisation v. City of San Diego*, 237 Cal.App.4th 163 (2015), *J. Arthur Properties, II, LLC v. City of San Jose*, 21 Cal.App.5th 480 (2018), and *Harrington v. City of Davis*, 16 Cal.App.5ths 420 (2017) are equally distinguished. None of these cases deal with a local agency interpreting federal law.

In *Friends of the East Hampton Airport*, the circuit court noted that preemption and jurisdiction issues are decided *de novo. Id*. at 143.  "We review de novo a state agency's interpretation of a federal statute. *Orthopaedic Hosp. v. Bleshe*, 013 F.3d 1491, 1495 (1997).  A state agency's interpretation of federal statutes is not entitled to deference…." *Ibid*.

No matter the amount of deference, the City cannot regulate flying aircraft even if the aircraft noise in the pattern breaks plaster off the ceilings of homes (which it does not).  The City had the opportunity to pursue the proper way to address a perceived noise problem by working with the FAA and following proper procedures.  It did neither and instead decided to take matters into its own hands.  The City cannot be allowed to be a vigilante and must be taken to task.

## XIII. <u>CONCLUSION</u>

The City knew it was prohibited from adopting the Touch & Go Ordinance. Despite this, the City adopted the Touch & Go Ordinance in order to limit legitimate and permissible flight maneuvers used by both trainees and licensed pilots, in violation of federal law. The limited scope of the City's proprietor exception only allows it to

ORBACH HUFF & HENDERSON LLP

regulate noise at the Airport (ground-based noise) and prohibits the City from regulating noise and flight operations from aircraft flying over neighborhoods in the pattern. The substantial evidence clearly establishes that the City sought to restrict and reduce overflight. The City's violation of federal law makes the Touch & Go Ordinance arbitrary and capricious. Moreover, the specific targeting of training flights is discriminatory.

Ample grounds exist for this Court to enjoin the City's violation of federal law. ZAPS counts licensed pilots, trainers, and trainees among its members, all of which are affected by the Touch & Go Ordinance, and on behalf of whom ZAPS has standing to bring this action. Because the Touch & Go Ordinance clearly intrudes into the preempted area of navigable airspace, this Court has authority to issue an injunction, as other courts have done in similar situations, prohibiting the City from enforcing its restrictions on touch-and-go, stop-and-go, full stop-taxi back, and low approach flight operations at the Airport. Accordingly, ZAPS requests that the Court issue a writ of mandate or equivalent declaratory judgment that the Touch & Go Ordinance is invalid and issue an injunction prohibiting the City from enforcing the Touch & Go Ordinance against aircraft using the Airport.

DATED:  August 28, 2025          ORBACH HUFF & HENDERSON LLP


By:_____/s/  Stan M. Barankiewicz, II.
Stan M. Barankiewicz II, Esq.
Attorneys for Plaintiff/Petitioner
ZAMPERINI AIRFIELD PRESERVATION
SOCIETY

ORBACH HUFF & HENDERSON LLP

1

## CERTIFICATE OF SERVICE

2

I certify that counsel of record who are deemed to have consented to electronic

3

service are being served on August 28, 2025 with a copy of this document via the

4

court's CM/ECF system pursuant to Local Rule 5-3.2.1.

5

6

      /s/  Stan M. Barankiewicz, II.

7

Stan M. Barankiewicz II, Esq.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORBACH HUFF & HENDERSON LLP

PLAINTIFF/PETITIONER ZAPS' REPLY BRIEF IN SUPPORT OF WRIT OF MANDATE

1

**CERTIFICATE OF COMPLIANCE**

2

     The undersigned, counsel of record for Plaintiff/Petitioner Zamperini Airfield

3

Preservation Society, certifies that this brief contains 16 pages, which complies with

4

the page limit set by court order dated January 22, 2025.

5

6

Dated: August 28, 2025          /s/  Stan M. Barankiewicz, II.

7

                        Stan M. Barankiewicz II, Esq

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORBACH HUFF & HENDERSON LLP